CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

JUN 1 4 2007

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| UNITED STATES and )<br>COMMONWEALTH OF VIRGINIA, *ex rel.* )<br> )<br>MEGAN L. JOHNSON, LCSW, )<br>LESLIE L. WEBB, MSW, and )<br>KIMBERLY STAFFORD-PAYNE, MA Therapist, )<br> )<br>BRING THIS ACTION ON BEHALF OF THE )<br>UNITED STATES OF AMERICA, and the )<br>COMMONWEALTH OF VIRGINIA )<br> )<br>v. )<br> )<br>UNIVERSAL HEALTH SERVICES, INC., )<br>KEYSTONE MARION, LLC, and )<br>KEYSTONE EDUCATION AND YOUTH )<br>SERVICES, LLC, all d/b/a KEYSTONE MARION )<br>YOUTH CENTER, )<br> )<br>        Defendants. ) | CIVIL ACTION NO. 1:07CV00054<br><br>Jury Trial Requested<br><br>TO BE FILED<br>*IN CAMERA*<br>AND UNDER SEAL |

## COMPLAINT

1.     This action is brought by three *qui tam* Relators, Megan L. Johnson, Leslie L.

Webb and Kimberly Stafford-Payne, in the name of the United States Government and the

Commonwealth of Virginia, to recover penalties and damages arising from the submission of

false Medicaid claims by Defendants, Universal Health Services, Inc. ("UHS"), Keystone

Marion, LLC, and Keystone Education and Youth Services, LLC, all doing business as Keystone

Marion Youth Center.  The relators also bring this action in their own right  to obtain the relief

needed to make them whole from the damages they suffered from sexual and racial

discrimination and violations of 31 U.S.C. § 3730(h) and the anti retaliation provision of the

Virginia Taxpayers Against Fraud Act.  Relators did not derive the allegations of wrongdoing

noted below from public disclosures.  In any case, Relators Webb, Johnson and Payne are

"original sources" of the information on which the allegations contained herein are based, as that term is defined in 31 U.S.C. §3730(e)(4).

## Jurisdiction And Venue

2.     This action arises under the False Claims Act, 31 U.S.C. § 3729 *et seq.*  This Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S. C. § 1331 in that this action arises under the laws of the United States.  This Court has subject matter jurisdiction over relators' discrimination claims based on federal question jurisdiction pursuant to Section 706(f) of the Civil Rights Act of 1964, 42 U.S.C. section 2000e-5(f) and pursuant to 28 U.S.C. section 1331(a) and 1343(a)(3) and the Equal Pay Act, 29 U.S.C. section 201, *et seq.*  And this Court has subject matter jurisdiction over the Virginia Taxpayers Against Fraud claims pursuant to 31. U.S.C. § 3732(b).

3.     Venue is proper in the United States District Court for the Western District  of Virginia pursuant to 28 U.S. C. §§ 1391(b), and 1391(c), and under 31 U.S.C. 3732(a) because each defendant transacts business within the district, and the acts proscribed by the False Claims Act occurred within the district.

## The Parties

4.     Relator **Megan L. Johnson** is a citizen and resident of the United States and Virginia and resides in the Wytheville, Virginia.

5.     Relator **Leslie L. Webb** is a citizen and resident of the United States and Virginia and resides in Rural Retreat, Virginia.

6.     Relator **Kimberly Stafford-Payne** is a citizen and resident of the United States and Virginia and resides in Wytheville, Virginia.

7.     Defendant **Universal Health Services, Inc.,** ("UHS") is a Delaware corporation with its headquarters in King of Prussia, Pennsylvania.

*U.S. ex rels. Webb, et al. v. United Health Services, et al.  ✦Complaint ✦Page 2 of 21*

Case 1:07-cv-00054-JPJ-PMS   Document 2   Filed 06/14/07   Page 2 of 21   Pageid#: 3

8.     Defendant **Keystone Marion, LLC,** is a Virginia limited liability company with its principal office in Nashville, Tennessee.

9.     Defendant **Keystone Education and Youth Services, LLC** ("KEYS") is a Tennessee limited liability company with its principal office in Nashville, Tennessee.

10.     Upon information and belief, defendants are affiliates of each other. Unless otherwise denoted, the three defendants shall be referred to collectively as "Defendant." UHS indirectly acquired the other two defendants in or around October 2005; accordingly, UHS is not included in "Defendant" for allegations to the extent that they relate to events occurring prior to that time.

## Factual Allegations

### A.     Background

11.     On or around September 2004, Defendant began operating Keystone Marion Youth Center, a residential 48 bed treatment center for boys ages 11-17, who had serious mental health and behavior problems ("Youth Center"). The Youth Center is located in Smyth County, Virginia.

12.     Relators Johnson, Webb and Payne are therapists who were employed by Defendant at the Youth Center.

13.     With only a few exceptions, Defendant restricted admission to the Youth Center to patients who would qualify for reimbursement of their medical costs under the Medicaid program.

14.     Pursuant to federal requirements governing the Medicaid program, including those in the State Medicaid Manual:

  i. each inpatient is limited to one individual therapy session per day, and minimal of three per week;

ii. to stay eligible each inpatient had to receive at least 21 group sessions a month;

iii. Only services actually rendered may be billed;

iv. services must be billed to Medicaid within one year of service.

15.     For each thirty-day treatment period for each resident, the treating therapist would prepare a 30-day Medicaid Review ("30-day Report"), which was required to be reviewed and signed by a physician.

16.      On December 13, 2004, Defendant hired relator Webb to work at the Youth Center as a Master of Social Worker.

17.     On April 25, 2005, and October 31, 2005, Defendant hired relators Johnson and Payne, respectively, to work at the Youth Center as Therapists.

18.     Relator Leslie Webb, Master of Social Work, had privileges at the Youth Center and admitted and treated numerous Medicaid patients for psychiatric problems at this facility.

19.     Dr. Cervantes was the Medical Director of Youth Center during this period.

20.     David Duncan was the Administrator of Youth Center during this period and reported directly to Dr. Cervantes.

21.     Kathy Smith was the Administrative Assistant of Youth Center during this period and reported directly to David Duncan.  She was later promoted to Business Office Manager and reported directly to David Duncan.

22.     Keith Lowry was the Clinical Director and Therapist Supervisor of Youth Center during this period and reported directly to David Duncan.

23.     Joseph Beaty was a Licensed Clinical Social Worker of Youth Center during this period and reported directly to Keith Lowry.

*U.S. ex rels. Webb, et al. v. United Health Services, et al. ✦ Complaint ✦ Page 4 of 21*

Case 1:07-cv-00054-JPJ-PMS   Document 2   Filed 06/14/07   Page 4 of 21   Pageid#: 5

**B.     False Medicaid Claims And Attempts By Defendant To Get Relators To Assist In The Fraud.**

24.     Beginning in December 2004 and continuing through the present, Defendant engaged in various activities and techniques to increase improperly and fraudulently the amount of the reimbursement that Defendant received from Medicaid from its operation of the Youth Center, which resulted in Defendant filing or causing to filed false claims to the Government for Medicaid reimbursement.  These activities and techniques included the following:

     a.    Billing for services to residents for which there is no supporting documentation that the service was provided;

     b.    regularly conducting group therapy sessions scheduled for fifty minutes for only ten to twenty minutes and billing for the full fifty minute session;

     c.    billing "drive by" five-minute interaction with a resident in a hallway or public room as a thirty-minute individual therapy session;

     d.    provoking ("escalating") residents so that the resident's reaction would serve to justify a longer length of stay in order to increase the Medicaid reimbursement for that resident;

     e.    billing for therapy sessions conducted by an unlicensed therapist when she was no longer under supervision towards licensure:

     f.    having non-clinical staff improperly alter the therapists' records in ways that would justify or increase Medicaid reimbursement;

     g.    delaying the discharge of residents who were ready for discharge in order to increase Medicaid reimbursement;

     h.    deliberately understaffing the Youth Center so that it was impossible to comply with Medicaid standards without all of the therapists working an average of at least 60 hours a week, which they did not do.

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ✦ *Complaint* ✦ *Page 5 of 21*

Case 1:07-cv-00054-JPJ-PMS   Document 2   Filed 06/14/07   Page 5 of 21   Pageid#: 6

25. While relators are able to include the identity of some of the specific residents and dates related to the false claims in the compliant, relators are unable to plead all of the details of those claims because the necessary information is in the control and custody of Defendant.

26. From December 2004 through June 2006, Defendant billed Medicaid for the treatment of certain residents even though the 30-day Report, therapy progress notes, master treatment plans, treatment plan review, and other documentation for that resident that were prerequisites for Medicaid reimbursement were nonexistent and/or missing. Residents for whom services were billed to Medicaid but for which that was no documentation and the periods of service include the following:

| | | |
|---|---|---|
| a) | P.F.[1] | March 29, April 11, 12, 20, 22, June 29, 2005 |
| b) | J.G. | April 12, 28, May 24, June 26, 2005 |
| c) | J.L. | May 7, 12, 13, June 3, 2005 |
| d) | K.B. | February 1, 9, 11, 14, 15, 16, 2005 |
| e) | M.C. | January 2005 – June 2005 |

27. Kathy Smith ordered the therapists to use "creative writing techniques" in their reports to exaggerate those aspects of a resident that would support diagnoses that would justify a longer length of stay for that resident.

28. Each therapist was assigned a daily group therapy session to conduct, Monday through Friday. Although the group therapy sessions were to last for 50 minutes, therapists Craig Shay and Joseph Beaty would typically begin a session 30 to 45 minutes later than the scheduled start time, and the session would then last only for the remaining scheduled time — 10 to 20 minutes. However, those therapists would document the session as having been conducted for the full 50 minutes and Defendant billed Medicaid accordingly.

---

[1] Only initials of the residents are disclosed in this complaint to preserve the confidentiality of their treatment. Relators have knowledge of their first and last names.

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ✦ *Complaint* ✦ *Page 6 of 21*

29.     Defendant, through its employees and agents David Duncan, Kathy Smith, Rebecca Young, Keith Lowry, Joseph Beaty and Christine Furches, repeatedly directed the female therapists to report fraudulently that therapy sessions were being conducted even though the sessions were not completed, purportedly as an effort to "reduce our workloads."

30.     Defendant, through its employees David Duncan, Kathy Smith and Keith Lowry, encouraged the therapists to falsify documentation by writing therapy notes for sessions that did not occur; to create therapy notes for the male therapists for sessions that were not completed and to complete reports for patients who had not yet been seen for therapy and to falsify many aspects of reporting in the documentation. For example, for the two-week period beginning April 21, 2006, residents whose records show them participating in therapy sessions that did not occur include the following: C.B., S.H., B.H., M.H., J.I., R.S., E.B.

31.     Defendant also encouraged the therapists to complete therapy notes for what was referred to as "drive-by" therapy, a term coined by Joseph Beaty. "Drive-by" therapy was basically stopping a client in the hallway and speaking with them for a period of less than 5 minutes and reporting it as a completed 20-30 minute therapy session.

32.     On July 1, 2006, Defendant terminated the required supervision of relator Johnson towards licensure that was being provided by Keith Lowry. However, Defendant continued to have relator Johnson conduct therapy sessions and to bill Medicaid for them even though those sessions were ineligible for Medicaid reimbursement because of the lack of supervision towards licensure.

33.     The discharges of residents were delayed to the beginning of the next month only so Medicaid reimbursement would thereby be increased since Medicaid would pay through the end of the month and the occupancy levels would reflect the expectations of the Corporate office. Residents whose discharges were delayed in this way included the following:

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ✦ *Complaint* ✦ *Page 7 of 21*

J.R., P.H., R.S., J.I.

34.     Defendant, acting through David Duncan and other staff, would purposefully "escalate" residents to decompensation (reducing the sense of mental balance) to achieve approval for longer lengths of stay and thereby increase the reimbursement from Medicaid. Duncan would also encourage negative behavior by residents by rewarding negative behavior and ignoring positive behavior of the residents. Those residents who were treated in this manner included the following: E.B., R.S, J.R., K.M., D.J., J.I., R.S., and J.J.

35.     In March 2006 Christine Furches, Third Shift Supervisor and Peter Blair, Medical Records Clerk approached Relator Webb and requested that she change the reporting periods on reports that were more than one year old to a date less then one year old so Defendant could submit a request for reimbursement from Medicaid for those services. She refused.

36.     In May 2006 Realtor Webb was approached by Peter Blair, who asked to reprint and resign a report that had been turned in approximately February 2006, approximately three months prior for patient/resident C. B., which Webb had been told had been lost.

37.     In or around May 2006, Relator Webb reported to Deborah Fahr, Ph.D., that documentation of the residents' treatment was missing and continued to disappear and that this had been a problem since December 2004.

38     Kathy Smith, the Administrative Assistant, demanded that all therapists provide her with their computer passwords, which would allow her or other unauthorized persons to have access to, and to rewrite, a therapist's reports after the therapist had signed and submitted the documentation. Smith also demanded that the therapists remove page numbers from their reports to facilitate other staff members turning in delinquent reports and/or making it less noticeable to the therapists and to Medicaid that sections of their reports were being recreated by non-clinical staff who were not directly involved in the care of the residents.

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ✦ *Complaint* ✦ *Page 8 of 21*

Case 1:07-cv-00054-JPJ-PMS   Document 2   Filed 06/14/07   Page 8 of 21   Pageid#: 9

39.     On June 2, 2006, relators reported to Deborah Jones and Nan Neese, Human Rights Advocates that documents that had been altered improperly by non-clinical staff members were repeatedly being placed in the residents' charts. At that time, Jones and Neese conducted a random chart audit in which they both saw the falsified documents.

40.     After conducting a detailed analysis, Deborah Fahr, Ph.D. , concluded that, if the requirements according to the caseload and Medicaid guidelines were being met, the therapists could not complete their tasks in less than 60 hours per week. However, Joseph Beaty and Keith Lowry did not consistently work more than 40 hours a week.

41.     Approximately April 24 - May 20, 2006, Realtor Payne reported to Deborah Fahr, Ph.D., that multiple instances of false billing had been taking place evidenced by the lack of therapist to cover the minimum amount of therapy sessions required by Medicaid. Defendant instructed the therapists to include more than 10 patients in therapy groups, even though Medicaid regulations limited the group to 10 patients. This group never appeared to take place as floor staff reported that these patients were left on their units while all others were taken to scheduled group therapy sessions, and Medicaid was billed for these nonexistent therapy groups.

42.     During Relators' employment at Youth Center, they were provided with identification badges that were used to swipe through the time clock to document work hours. Initially, relators were told by administration to swipe upon arrival and departure. However, administration later instructed relators to only swipe once daily, upon arrival. Then again relators were asked to swipe twice per day at any time during the day, and then it was change back to swipe only once a day - making it impossible for administration to document the amount of hours for any employee during a given day.

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ✦ *Complaint* ✦ *Page 9 of 21*

Case 1:07-cv-00054-JPJ-PMS   Document 2   Filed 06/14/07   Page 9 of 21   Pageid#: 10

43.     Residents reported to relators that Joseph Beaty was not completing the required individual therapy sessions with them as required under Medicaid regulations, however, Defendant was billing for therapy sessions that never took place.

44.     Between April 21, 2006 and May 3, 2006 Relator Webb was on vacation and upon her return was instructed by Keith Lowry and Kathy Smith to complete therapy notes for her clients for her vacation period. Relator Webb refused to complete the documentation for sessions that had not occurred during her absence.

45.     Dr. Cervantes, Medical Director of Youth Center instructed Relator Webb to complete a 30-day Medicaid Review for the patient to whom she had given only two of the approximate 36 sessions required for Medicaid billing.

**C.      Harassment Of, And Discrimination and Retaliation Against Relators.**

46.     During her employment, Webb was sexually harassed by Joe Beaty, whose duties included supervising Webb's clinical supervision for licensure. Beaty made sexually explicit comments to her, discussed watching pornographic movies with his wife, engaged in inappropriate touching and sent her e-mails with sexually implicit content.

47.     During her employment, Webb was discriminated against due to her sex in the following ways:.

> (a)     Office space and computers provided to her were inferior to those provided to male therapists;
>
> (b)     Documentation requirements and workload was greater than for male therapists;
>
> (c )     The security access for her office was less than for male therapists;
>
> (d)     Joe Beaty was provided with a transcriptionist while female therapists were not; and

*U.S. ex rels. Webb, et al. v. United Health Services, et al. ✦ Complaint ✦ Page 10 of 21*

Case 1:07-cv-00054-JPJ-PMS   Document 2   Filed 06/14/07   Page 10 of 21   Pageid#: 11

      (e)      Female therapists were paid less than similarly situated male therapists.

48.     As another act of sex discrimination, and/or because Webb had refused to go along with the Medicaid fraud and triggered the investigation of the Youth Center by the Virginia licensing authorities, Defendant retaliated against Webb by discharging her on June 13, 2006. Prior to that date, as a result of Defendant's improper actions, Webb felt forced to tell Defendant that she was going to resign as of the end of June 2006.

49.     At the time of the discharge, Webb was performing at a level that met her employer's legitimate job expectations.

50.     From November 2005 through March 2006, Payne was also sexually harassed by Beaty. Beaty made sexually explicit comments to her, made solicitations for neck massages, showed her clothing on the Internet that he thought would look good on her and sent inappropriate e-mails. During a portion of that time, he was Payne's supervisor.

51.     During her employment, Payne was discriminated against due to her sex in the following ways:

      (a)      Office space and computers provided to her were inferior to those provided to male therapists;

      (b)      Documentation of female therapists' work was "lost" by Defendant's utilization review staff and later found in its possession in an attempt to sabotage the performance of female therapists, including Payne;

      (c )     Payne and other female therapists were expected to carry case loads of 8 to 12 inpatients, while Beaty, a male therapist, was required to carry a case load of only four inpatients; and

      (d)      Denied sick leave.

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ✦ *Complaint* ✦ *Page 11 of 21*

Case 1:07-cv-00054-JPJ-PMS   Document 2   Filed 06/14/07   Page 11 of 21   Pageid#: 12

52. Payne was subject to various on-the-job forms of sexual harassment and sexual discrimination by co-workers and supervisors. On information and belief, Payne alleges that the male employees were not subjected to such treatment. Defendant condoned and ratified this misconduct and took no action to stop it, although Defendant was aware of such misconduct.

53. After Payne reported the harassment and Beaty was terminated by corporate office personnel and after Payne had refused to go along with the Medicaid fraud and triggered the investigation of the Youth Center by the Virginia licensing authorities, Defendant retaliated against Payne, including taking the following actions:

   (a)   Defendant refused to hire a replacement for Beaty and shifted his caseload onto Payne and other female therapists; and

   (b)   Paperwork was "lost" and reprimands were threatened if Payne did not reproduce it after reporting human rights and licensure violations.

54. As a result of Defendant's improper actions, Payne was constructively discharged when she was forced to resign on June 16, 2006.

55. During her employment, Johnson was discriminated against due to her sex and race in the following ways:

   (a)   Office space and computers provided to her were inferior to those provided to male therapists;

   (b)   Documentation requirements and workload were greater than for male therapists;

   ( c)   Black therapists were paid less than similarly situated white therapists; and

   (d)   Johnson received fewer opportunities for supervision toward licensure than similarly situated white therapists.

*U.S. ex rels. Webb, et al. v. United Health Services, et al. ✦ Complaint ✦ Page 12 of 21*

Case 1:07-cv-00054-JPJ-PMS Document 2 Filed 06/14/07 Page 12 of 21 Pageid#: 13

56.     Johnson was subject to various on-the-job forms of race and sexual discrimination by co-workers and supervisors. On information and belief, Johnson alleges that male employees were not subjected to such treatment. Defendant condoned and ratified this misconduct and took no action to stop it, although the defendant was aware of such misconduct.

57.     As another act of sex and/or race discrimination, and/or because Johnson had refused to go along with the Medicaid fraud and triggered the investigation of the Youth Center by the Virginia licensing authorities, Defendant retaliated against Johnson by discharging her on August 22, 2006.

58.     At the time of their respective discharges, Webb, Payne and Johnson were performing at a level that met their employer's legitimate job expectations.

59.     Webb, Payne and Johnson each has exhausted her administrative remedies for her discrimination claims and has received her right to sue letter from the U.S. Equal Employment Opportunity Commission.

### Count I -- False Claims Act Violations

60.     Relators Webb, Johnson and Payne hereby incorporate and re-allege herein the previous paragraphs as if fully set forth herein.

61.     In submitting the false Medicaid claims to the Government, Defendant falsely certified, expressly and/or implicitly, compliance with all Medicaid rules and regulations

62.     By engaging in the acts set forth above, Defendant, by and through its agents, officers and employees, in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733, (I) knowingly presented or caused to be presented to the Government numerous false or fraudulent claims for payment or approval, (ii) knowingly made, used or caused to be made or used, false records or statements to get a false or fraudulent claim paid or approved by the Government; (iii)

*U.S. ex rels. Webb, et al. v. United Health Services, et al. ✦ Complaint ✦ Page 13 of 21*

Case 1:07-cv-00054-JPJ-PMS   Document 2   Filed 06/14/07   Page 13 of 21   Pageid#: 14

conspired to defraud the Government by getting a false or fraudulent claim allowed or paid; and/or committed other violations listed of the False Claims Act set forth in § 3729(a)(4)-(7).

63.     The United States has been damaged as a result of Defendant's violations of the False Claims Act in amounts to be proven at trial.

64.     The United States is entitled to treble damages based upon the amount of damage sustained by the United States as a result of Defendants' violations of 31 U.S.C. § 3729.

65.     The United States is entitled to a civil penalty of between $5,000.00 and $10,000.00 as required by 31 U.S.C.  § 3729(a) for each violation of the False Claims Act by the Defendants

66.     Relators are also entitled to reasonable attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d)(1).

## Count II -- Virginia Taxpayers Against Fraud Violations Claim

67.     Relators repeat and re-alleges each and every allegation contained in all of the allegations set forth above.

68.     Medicaid is actually administered at the state level, and is funded with both federal and state monies.  Since Defendant's violations involved monies funded, at least in part, by the Commonwealth of Virginia, Defendant's actions also violated the  Virginia Fraud Against Taxpayers Act, Va. Code Ann. sec. 8.01-216.1, et seq.

## Count III -- Webb's False Claims Act Retaliation Claim

69.     Relator Webb hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

70.     Relator Webb was discriminated against, and discharged from her employment by Defendant, because of lawful acts done by Webb in furtherance of an action and/or possible

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ✦ *Complaint* ✦ *Page 14 of 21*

Case 1:07-cv-00054-JPJ-PMS   Document 2   Filed 06/14/07   Page 14 of 21   Pageid#: 15

action under the False Claims Act and/or investigation of False Claim Act violations that could serve as a basis of an action under the False Claim Act. .

71.     The actions of Defendant were intentional, violated 31 U.S.C. § 3730 (h) and damaged relator Webb.

72.     Webb suffered damages from Defendant's actions that include, but are not limited, to the loss of her job, loss of income, mental anguish, and emotional and mental distress.

73.     Therefore, relator Webb is entitled to the relief provided by 31 U.S.C. § 3730(h), including damages in an amount to be determined at trial.

### Count IV — Webb's Virginia Taxpayers Against Fraud Act Retaliation Claim

74.     Relator Webb hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

75.     Relator Webb was discriminated against in the terms and conditions of her employment, and ultimately discharged because she opposed the actions of Defendant as set forth in this Complaint that constituted practices referenced in Virginia Code section 8.01-216.3, and otherwise took actions that qualified her for relief under section 8.01-216.8 of the Virginia Code.

76.     Therefore, Webb is entitled to the relief provided by Va. Code Ann. section 8.01-216.8.

### Count V -- Johnson's False Claims Act Retaliation Claim

77.     Relator Johnson hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

78.     Johnson was discriminated against, and discharged from her employment by Defendant, because of lawful acts done by Johnson in furtherance of an action and/or possible action under the False Claims Act and/or investigation of False Claim Act violations that could

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ✦ *Complaint* ✦ *Page 15 of 21*

Case 1:07-cv-00054-JPJ-PMS   Document 2   Filed 06/14/07   Page 15 of 21   Pageid#: 16

serve as a basis of an action under the False Claim Act, including their reporting of False Claims Acts violations to federal officials and her participation in the investigation of those violations by those officials and her investigation of the actions of the Defendant that are actionable under the False Claims Act.

79.     The actions of Defendant were intentional, violated 31 U.S.C. § 3730 (h) and damaged relator Johnson.

80.     Johnson suffered damages from Defendants' actions that include, but are not limited, to the loss of her job, loss of income, mental anguish, and emotional and mental distress.

81.     Therefore, relator Johnson is entitled to the relief provided by 31 U.S.C. § 3730(h), including damages in an amount to be determined at trial.

### Count VI — Johnson's  Virginia Taxpayers Against Fraud Act Retaliation Claim

82.     Relator Johnson hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

83.     Relator Johnson was discriminated against in the terms and conditions of her employment, and ultimately discharged because she opposed the actions of Defendant as set forth in this Complaint that constituted practices referenced in Virginia Code section 8.01-216.3, and otherwise took actions that qualified her for relief under section 8.01-216.8 of the Virginia Code.

84.     Therefore, Johnson is entitled to the relief provided by Va. Code Ann. section 8.01-216.8.

### Count VII -- Payne's False Claims Act Retaliation Claim

85.     Relator Payne hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

*U.S. ex rels. Webb, et al. v. United Health Services, et al.  ✦ Complaint ✦ Page 16 of 21*

Case 1:07-cv-00054-JPJ-PMS   Document 2   Filed 06/14/07   Page 16 of 21   Pageid#: 17

86.     Payne was discriminated against, and discharged from her employment by Defendant because of lawful acts done by Payne in furtherance of an action and/or possible action under the False Claims Act and/or investigation of False Claim Act violations that could serve as a basis of an action under the False Claim Act, including their reporting of False Claims Acts violations to federal officials and her participation in the investigation of those violations by those officials and her investigation of the actions of the Defendant that are actionable under the False Claims Act.

87.     The actions of defendant were intentional, violated 31 U.S.C. § 3730 (h) and damaged relator Payne.

88.     Payne suffered damages from Defendants' actions that include, but are not limited, to the loss of her job, mental anguish, and emotional and mental distress.

89.     Therefore, relator Payne is entitled to the relief provided by 31 U.S.C. § 3730(h), including damages in an amount to be determined at trial.

### Count VIII — Payne's Virginia Taxpayers Against Fraud Act Retaliation Claim

90.     Relator Payne hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

91.     Relator Payne was discriminated against in the terms and conditions of her employment, and ultimately discharged because she opposed the actions of Defendant as set forth in this Complaint that constituted practices referenced in Virginia Code section 8.01-216.3, and otherwise took actions that qualified her for relief under section 8.01-216.8 of the Virginia Code.

92.     Therefore, Payne is entitled to the relief provided by Va. Code Ann. section 8.01-216.8.

### Count IX — Webb's Sex Discrimination Claim: Disparate Treatment

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ✦ *Complaint* ✦ *Page 17 of 21*

Case 1:07-cv-00054-JPJ-PMS   Document 2   Filed 06/14/07   Page 17 of 21   Pageid#: 18

93.     Webb hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

94.     The actions of Defendant constitute unlawful sex discrimination.

### Count X — Webb's Sexual Harassment Claim

95.     Webb hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

96.     The actions of Defendant constitute unlawful sexual harassment.

### Count XI — Webb's  Equal Pay Act Violation Claim

97.     Webb hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

98.     The actions of Defendant violated the Equal Pay Act, 29 U.S.C. section 201, *et seq.*

### Count XII — Payne's Sex Discrimination Claim: Disparate Treatment

99.     Payne hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

100.    The actions of Defendant constitute unlawful sex discrimination.

### Count XIII — Payne's Sexual Harassment Claim

101.    Payne hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

102.    The actions of Defendant constitute unlawful sexual harassment.

### Count XIV — Johnson's Sex Discrimination Claim: Disparate Treatment

103.    Johnson hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

104.    The actions of Defendant constitute unlawful sex discrimination.

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ✦ *Complaint* ✦ *Page 18 of 21*

Case 1:07-cv-00054-JPJ-PMS   Document 2   Filed 06/14/07   Page 18 of 21   Pageid#: 19

### Count XV — Johnson's Sexual Harassment Claim

105.    Johnson hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

106.    The actions of Defendant constitute unlawful sexual harassment.

### Count XVI — Johnson's Racial Discrimination Claim

107.    Johnson hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

108.    The actions of Defendant constitute unlawful race discrimination.

### Count XVII — Johnson's Equal Pay Act Claim

109.    Johnson hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

110.    The actions of Defendant violated the Equal Pay Act, 29 U.S.C. section 201, *et seq.*

**Wherefore,** with respect to Count I, the Relators, on behalf of themselves and the United States, request that this Court grant the following relief:

(a)    That judgment against each named Defendant in an amount equal to three times the amount of damages the United States has sustained because of his or its actions, plus a civil penalty of $5,000 to $10,000 for each violation of 31 U.S.C. § 3729, and the costs of this action, with interest, including the costs of the United States, and the Commonwealth of Virginia for their expenses related to this action;

(b)    That the Relators be awarded all costs incurred, including reasonable attorneys' fees;

(c)    That in the event that the United States intervenes in this action, the Relators be awarded 25%, but in no event less than 15%, of the proceeds of the resulting judgment in or settlement of this action;

(d)    That in the event that the United States does not intervene in this action, the Relator be awarded 30%, but in no event less than 25%, of the proceeds of the resulting judgment in or settlement of this action;

(e)    That the Relators and, the United States be awarded prejudgment interest; and

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ✦ *Complaint* ✦ *Page 19 of 21*

Case 1:07-cv-00054-JPJ-PMS    Document 2    Filed 06/14/07    Page 19 of 21    Pageid#: 20

(f)     That the United States, and the Relators receive all relief both at law and at equity, as this Court determines is appropriate.

**Wherefore,** with respect to Counts III, IV, and V, Relators, on behalf of themselves and the Commonwealth of Virginia, request that the Court grant them all of the relief to which they are entitled under the Virginia Taxpayers Against Fraud Act.

**Wherefore,** with respect to Counts III through VIII, Relators request that the Court grant the following relief:

(a)     That Relators be awarded all the relief to which they are entitled pursuant to 31 U.S.C. § 3730 (h), including personal injury damages for emotional and mental distress, two times their back pay, interest on the back pay, front pay or reinstatement, attorneys fees and litigation costs; and

(b)     Such other relief as the Court finds appropriate.

**Wherefore**, with respect to the Count XV through XVII, Relator Johnson requests that the Court grant her the following relief:

(a) compensatory damages;

(b) front pay, back pay, liquidated damages (under the Equal Pay Act), pre-judgment and post-judgment interest, her attorney's fees and costs expended in this action; and

(c) Such further relief as the Court finds appropriate.

**Wherefore**, with respect to Counts IX through XI, Relator Webb requests that the Court grant her the following relief:

(a) compensatory damages;

(b) front pay, back pay, liquidated damages (under the Equal Pay Act), pre-judgment and post-judgment interest, her attorney's fees and costs expended in this action; and

(c) Such further relief as the Court finds appropriate.

**Wherefore**, with respect to the Counts XII and XIII, Relator Payne requests that the Court grant her the following relief:

(a) compensatory damages;

(b) front pay, back pay,  pre-judgment and post-judgment interest, her attorney's fees and costs expended in this action; and

*U.S. ex rels. Webb, et al. v. United Health Services, et al. ✦ Complaint ✦ Page 20 of 21*

Case 1:07-cv-00054-JPJ-PMS   Document 2   Filed 06/14/07   Page 20 of 21   Pageid#: 21

(c) Such further relief as the Court finds appropriate.

**A TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

LESLIE L. WEBB
MEGAN L. JOHNSON
KIMBERLY STAFFORD-PAYNE

BY:

Mark T. Hurt (VSB#36380)
159 West Main Street
Abingdon, VA 24210
(540) 623-0808 Phone
(540) 623-0212 Fax

Daniel R. Bieger (VSB# 18456)
Copeland & Bieger
212 W. Valley Street
Abingdon VA 24212
(276) 628-9525 Phone
(276) 628-4711 Fax

Counsel for Relator

*U.S. ex rels. Webb, et al. v. United Health Services, et al. ✦ Complaint ✦ Page 21 of 21*