# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA, ET AL.,** | ) <br> ) <br> ) Case No. 1:07CV00054 |
| Plaintiffs, | ) <br> ) |
| | ) **OPINION AND ORDER** |
| v. | ) <br> ) |
| | ) By:  James P. Jones |
| **UNIVERSAL HEALTH SERVICES, INC., ET AL.,** | ) United States District Judge <br> ) <br> ) |
| Defendants. | ) |

*Rick A. Mountcastle, Assistant United States Attorney, Roanoke, Virginia, for Plaintiff United States of America; Michael T. Judge, Senior Assistant Attorney General of Virginia, and Erica J. Bailey, Assistant Attorney General of Virginia, Richmond, Virginia, for Plaintiff Commonwealth of Virginia; Daniel R. Bieger, Copeland & Bieger, P.C., Abingdon, Virginia, and Mark T. Hurt, Abingdon, Virginia, for Relators; and Janet S. Nolan and Peter J. Leininger, Fulbright & Jaworski, LLP, Washington, D.C., and Martin A. Donlan, Jr., Williams Mullen, PC, Richmond, Virginia, for Defendants.*

It is claimed in this civil action that a juvenile psychiatric facility submitted false or fraudulent claims in order to obtain Medicaid reimbursement. The defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that the allegations are insufficient as a matter of law to obtain any relief. The motions have been briefed and argued, and are ripe for decision. For the reasons that follow, I will grant the motions in part and deny them in part.

I

The Keystone Marion Youth Center (the "Youth Center"), located in this judicial district, is a residential treatment center designed to provide inpatient psychiatric services to juveniles, most of whom are Medicaid beneficiaries. The Youth Center is operated by defendants Keystone Marion, LLC, and Keystone Education and Youth Services, LLC, affiliated entities that are subsidiaries of the third defendant, Universal Health Services, Inc. ("UHS"), a for-profit corporation.

Medicaid is a joint federal-state governmental program that provides medical benefits to indigent and disabled individuals.

This case began when Megan L. Johnson, Leslie Webb, and Kimberly Stafford-Payne (the "Realtors"), all of whom are former therapists at the Youth Center, filed a qui tam action pursuant to the federal False Claims Act ("FCA"), 31 U.S.C.A. §§ 3729-33 (West 2003 & Supp. 2010), and the Virginia Fraud Against Taxpayers Act ("VFATA"), Va. Code Ann. §§ 8.01-216.1-.19 (2007). In addition to claiming that false or fraudulent claims were submitted to Medicaid, the Relators claimed that they had been fired in retaliation for their refusal to comply with the fraudulent practices. They also asserted that a supervisor had sexually harassed them and that they had been discriminated against in violation of Title VII of the Civil Rights Act of 1964,

42 U.S.C.A. §§ 2000e to 2000e-17 (West 2003 & Supp. 2010) ("Title VII") and the Equal Pay Act, 29 U.S.C.A. § 206(d) (West 1998).

Thereafter, the United States and the Commonwealth of Virginia intervened in the case and filed a new complaint (the "Government Complaint"), reasserting the Relators' FCA and VFATA claims.

II

Under federal pleading standards, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are unnecessary, a pleading must contain more than a formulaic recitation of an action's elements. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), a complaint may withstand a motion to dismiss if it contains plausible factual allegations that demonstrate something more than the "sheer possibility that a defendant has acted unlawfully." At this stage in the proceedings, I must consider the facts alleged by plaintiffs as true, but I cannot accept mere labels, assertions, and conclusions, unsupported by pleaded facts. *Twombly*, 550 U.S. at 555.

Moreover, Federal Rule of Civil Procedure 9 requires that when a plaintiff alleges fraud, it must do so with particularity as to the "'time, place, and contents of

the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

To prevail under the FCA requires a showing that the defendants knowingly presented a false or fraudulent claim for payment or approval, or that they made or used false records or statements material to such a claim. *See* 31 U.S.C.A. § 3729(a)(1)(A), (B). The VFATA has virtually identical requirements as to state claims. *See* Va. Code Ann. § 8.01-216.3(1), (2).

Based upon my careful review of the Government Complaint, I find that it adequately alleges violations of the FCA and the VFATA.

On the other hand, the Government Complaint does not contain enough factual allegations as to defendant UHS. The plaintiffs assert that they specified UHS' involvement by simply pleading that "the defendants" (plural) committed the acts. But this stroke of a computer key fails to create a pleading that meets *Iqbal's* standards or the particularity requirements of Rule 9(b). The Government Complaint does not establish how UHS was involved in the alleged scheme because ownership of a subsidiary, "'without some degree of participation by the parent in the claims process, is not enough to support a claim against the parent for the subsidiary's FCA violation.'" *United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498

F. Supp. 2d 25, 59-60 (D.D.C. 2007) (quoting *United States ex rel. Tillson v. Lockheed Martin Energy Sys., Inc.*, Nos. Civ.A. 5:00CV-39-M, Civ.A. 5:99CV-170-M, 2004 WL 2403114, at *33 (W.D. Ky. Sept. 30, 2004)). The Government Complaint also fails to allege facts that demonstrate that the subsidiaries were the mere alter egos of the parent UHS in order to allow the corporate veil to be pierced. *See Hockett,* 498 F. Supp. 2d at 60. Thus, the claims against UHS must be dismissed.

The Government Complaint also asserts a violation of the separate Virginia statute prohibiting the fraudulent obtaining of health care benefits. Va. Code Ann. § 32.1-312 (2009). While the Government Complaint allows for the plausible inference that the subsidiaries fraudulently obtained such benefits, the same cannot be said for UHS. As with the FCA and VFATA claims, the Government Complaint does not include facts that permit the conclusion that UHS is responsible.

Finally, the Government Complaint alleges a common law unjust enrichment claim, contending that the defendants were unjustly enriched by being paid for services not performed. In Virginia, a claim of unjust enrichment "is an implied or quasi-contract remedy" based upon equitable principles. *Inman v. Klockner Pentaplast of Am., Inc.*, 467 F. Supp. 2d 642, 655 (W.D. Va. 2006). An unjust enrichment claim "may not be brought in the face of an express contract," because the cause of action serves to aid plaintiffs who have not formally entered into a contract

with a defendant. *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988); *see also Nedrich v. Jones*, 429 S.E.2d 201, 207 (Va. 1993). At oral argument the plaintiffs conceded that an express contract existed with the defendants as to the services to be provided. Thus, the plaintiffs may not pursue the equitable remedy of unjust enrichment against any of the defendants.

### III

After the United States and the Commonwealth of Virginia intervened, the Relators filed an Amended Complaint. While *Iqbal's* standards also govern my interpretation of the Relators' pleading, I must dismiss Counts One and Two of the Amended Complaint for a reason other than implausibility. Under the FCA, an individual may bring an action "in the name of the Government." 31 U.S.C. § 3730(b)(1). A qui tam action, in which an individual sues on behalf of the government, is permissible because the individual is an assignee of the government's claim. If the government decides to intervene, however, the relator may no longer proceed with the claim. Instead, the "action shall be conducted by the Government." 31 U.S.C.A. § 3730(b)(4). The VFATA has a similar provision. *See* Va. Code Ann. § 8.01-216.6(A).

The Relators concede that the Government Complaint superseded their FCA and VFATA claims. And, the Relators cannot point to any case law supporting their theory that the inoperative claims should linger on the docket while the government proceeds. Because the intervention means that the Relators can no longer prosecute the alleged false claims, Counts One and Two of the Relators' Amended Complaint must be dismissed.

The Relators also assert they were discharged in retaliation for their pursuit of litigation under the FCA and VFATA.[1] These federal and Virginia laws protect employees who face discrimination due to acts done in furtherance of a FCA or VFATA lawsuit. *See* 31 U.S.C.A. § 3730(h), Va. Code Ann. § 8.01-216.8.

For such whistleblower protection under the FCA, a plaintiff must show that she acted in furtherance of an FCA suit, that her employer knew of these acts, and that the employer treated her adversely because of the protected activity. *United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, No. 09-1899, 2010 WL 2794369, at*10 (4th Cir. July 16, 2010) ( "A protected activity need not indicate

---

[1] At oral argument the Relators agreed that their retaliation claims did not apply to UHS. While this concession specifically related to the FCA and VFATA retaliation claims, the Relators' remaining claims against UHS must also be dismissed. Other than UHS' ownership of the other defendants, the Relators' pleading does not contain any facts that connects UHS to the acts alleged in the Amended Complaint.

that an actual FCA suit was being contemplated, but it must evince some attempt to expose possible fraud.").

The VFATA prohibits an employer's retaliation against an employee because the employee "has opposed any practice referenced in" the VFATA or because the employee "initiated, testified, assisted, or participated in any manner in any investigation, action or hearing" that relates to acts prohibited by the VFATA. Va. Code Ann. § 8.01-216.8.

The Relators' Amended Complaint states that on two separate occasions, supervisors asked Webb to falsify records used for Medicaid claims and she refused to do so. The pleading also alleges that Webb "reported to Deborah Fahr, Ph.D., that documentation of residents' treatment was missing and continued to disappear." (Am. Compl. ¶ 38.) Stafford-Payne, according to the Amended Complaint, told Fahr "that multiple instances of false billing had been taking place ." (*Id*. at ¶ 42.) All three Relators allege that they "reported to Deborah Jones and Nan Neese, Human Rights Advocates, that documents that had been altered improperly by non-clinical staff members were repeatedly being placed in the residents' charts." (*Id*. at ¶ 40.)

These facts do not allow for the reasonable inference that any of the Relators engaged in protected activity or that the defendants knew of the Relators' acts. Webb's refusal to alter documents does not constitute an act in furtherance of a FCA

-8-

claim because there is no evidence that Webb had attempted to expose the alleged fraud. Although Webb and Stafford-Payne spoke with Fahr about alleged abuses, the Amended Complaint is devoid of any facts, such as the name of Fahr's employer, her job duties, or what Fahr did with the information, that would assist in understanding the importance of these conversations. The same holds true for the disclosures to "Human Rights Advocates." Based upon the scant information in the Amended Complaint, it is unclear whether these advocates had any authority to investigate the alleged wrong doings. Finally, the pleading has no information that indicates the defendants knew of Webb's and Stafford-Payne's conversations with Fahr, Jones, or Neese. Thus, the Amended Complaint lacks enough factual allegations to support a plausible claim of retaliation under the FCA.

The fate of the plaintiffs' VFATA retaliation claims differs slightly. Of the three Relators, only Webb has a viable retaliation claim under the VFATA. This is because Webb alleges that on at least two separate occasions she refused to participate in acts to defraud Medicaid. For the purposes of Virginia's retaliation standard, these facts allow for the reasonable inference that Webb opposed practices prohibited by the VFATA. The Amended Complaint, however, does not state a plausible retaliation claim for Stafford-Payne or Johnson because the pleading does not allege facts that show that they " opposed any practice" prohibited by the VFATA

or that they "initiated, testified, assisted, or participated . . . in any investigation, action or hearing" that relates to acts prohibited by the VFATA. Va. Code Ann. § 8.01-216.8.

Johnson's and Webb's Equal Pay Act claims must also be dismissed due to the insufficiency of the facts alleged. To establish a prima facie case under the Equal Pay Act, a female plaintiff must show that she: "(1) receive[d] lower pay than a male co-employee (2) for performing work substantially equal in skill, effort, and responsibility under similar working conditions." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 948 (4th Cir. 1995). A plaintiff cannot compare herself to a hypothetical male counterpart. *Id*. Instead, the comparison must be made against a specific male co-worker and on a factor by factor basis as to work-load and pay. *Houck v. Va. Polytechnic Inst. & State Univ.*, 10 F.3d 204, 206 (4th Cir. 1993). "'[I]solated incidents or random comparisons demonstrating disparities in treatment,'" without additional evidence of inequalities, are insufficient to establish a prima facie case of discrimination. *Strag*, 55 F.3d at 948 (quoting *Houck*, 10 F.3d at 206-07).

The Amended Complaint states that Webb faced gender-based wage discrimination because, "[f]emale therapists were paid less than similarly situated male therapists." (Am. Compl. ¶ 49(e).) This single allegation is the extent of the

plaintiffs' factual assertions as to the Equal Pay Act. It does not meet *Iqbal's* standard because it does not compare Johnson's and Webb's salaries or work to those of any specific male employees.

The Relators have also asserted three types of Title VII claims. All three Relators allege they were sexually harassed by a supervisor and that they received disparate treatment due to their sex. In addition, Johnson alleges she received disparate treatment due to her race.

A prima facie case under Title VII requires a plaintiff to establish that they are a member of a protected class, that they were qualified for the position in question, and that they faced adverse employment action due to their race, color, religion, sex, or national origin. *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). An adverse employment action is "a discriminatory act which 'adversely affects "the terms, conditions, or benefits" of the plaintiff's employment.'" *Id.* (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001). The Relators' pleading contains enough factual allegations to allow for the reasonable conclusion that Johnson, Webb, and Stafford-Payne faced race or gender-based discrimination that adversely affected their employment conditions and benefits. Thus, these claims may stand.

Finally, I will consider the Relators' claims of sexual harassment. To prevail on a sexual harassment claim that alleges a hostile work environment, an employee must prove "(1) that she was harassed 'because of' her 'sex'; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 241 (4th Cir. 2000). An employee is harassed "'because of' his or her gender if, 'but for' the employee's gender, he or she would not have been the victim of the discrimination." *Id*. at 241-42. An employer may be held vicariously liable for a supervisor's sexual harassment of immediate subordinates that results in tangible employment action, such as demotion or firing. *Id*. at 244 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998)).

In the Amended Complaint Webb and Stafford-Payne included sufficient factual assertions about the sexual harassment that they suffered at the hands of supervisor Joe Beaty. Based upon these facts, liability may be imputed to the defendants for Webb's and Stafford-Payne's claims because Beaty held an immediate supervisory position over the two women. Johnson's claim, however, fails because the Amended Complaint does not include a single factual allegation that describes how Johnson was sexually harassed and whether Beaty supervised Johnson.

IV

For the foregoing reasons, it is **ORDERED** as follows:

1. The Motions to Dismiss by the defendants Keystone Education and Youth Services, LLC, and Keystone Marion, LLC (DE 54, 65) are GRANTED IN PART AND DENIED IN PART;

2. The Motion to Dismiss by defendant Universal Health Services, Inc. (DE 56) is GRANTED and said defendant is DISMISSED from this action;

3. The Motions to Dismiss by the defendants Keystone Education and Youth Services, LLC, and Keystone Marion, LLC, are GRANTED as to Count Six of the Complaint filed by the United States of America and the Commonwealth of Virginia;

4. The Motions to Dismiss by the defendants Keystone Education and Youth Services, LLC, and Keystone Marion, LLC, are GRANTED as to Counts One, Two, Three, Five, Six, Seven, Eight, Eleven, Fifteen, and Seventeen of the Amended Complaint filed by the Relators;

5. The Motions to Dismiss by the defendants Keystone Education and Youth Services, LLC, and Keystone Marion, LLC, are otherwise DENIED; and

6. In the event that any party desires to file an amended complaint, a motion seeking leave must be filed no later than 14 days from the date hereof and must include the proposed amended complaint. If an opposing party objects to the motion, the grounds of such objection must be filed within 14 days following service. The movant may reply within 7 days. Oral argument will not be held unless the court requests it.

ENTER: July 28, 2010

/s/ JAMES P. JONES
United States District Judge