# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| UNITED STATES and **)** | |
| COMMONWEALTH OF VIRGINIA, *ex rel.* **)** | |
| MEGAN L. JOHNSON, et al. **)** | |
| **)** | **Civil Action No.: 1:07** |
| v. **)** | |
| **)** | |
| KEYSTONE MARION, LLC, and **)** | |
| KEYSTONE EDUCATION AND YOUTH **)** | |
| SERVICES, LLC, all d/b/a KEYSTONE MARION **)** | |
| YOUTH CENTER, **)** | |
| **)** | |
| Defendants. **)** | |

## SECOND AMENDED COMPLAINT

1.      This action was brought by three *qui tam* Relators, Megan L. Johnson, Leslie L.

Webb and Kimberly Stafford-Payne, in the name of the United States Government and the

Commonwealth of Virginia, to recover penalties and damages arising from the submission of

false Medicaid claims by Defendants, Keystone Marion, LLC, and Keystone Education and

Youth Services, LLC, all doing business as Keystone Marion Youth Center.  Relators did not

derive the allegations of wrongdoing noted below from public disclosures.  In any case, Relators

Webb, Johnson and Payne are  "original sources" of the information on which the allegations

contained herein are based, as that term is defined in 31 U.S.C. §3730(e)(4).  The United States

and Commonwealth of Virginia have intervened in this action and have filed a complaint that

alleges substantially all of the wrongdoing alleged by the relators in this action.  Consequently,

relators' counts for those claims have been superceded by those in the governments' complaint

and have accordingly been dismissed by the Court.  Relators retain a legal interest in those claims

and are entitled by statute to seek relief to be derived from the successful prosecution of those

claims.  The relators also bring this action in their own right to obtain the relief needed to make

them whole from the damages they suffered from sexual and racial discrimination, wrongful

*U.S. ex rels. Webb, et al. v. Universal Health Services,, et al.* ✦ *Notice of New Authority* ✦ *Page 1 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 1 of 31   Pageid#: 737

discharge, and violations of 3l U.S.C. § 3730(h) and the anti-retaliation provision of the Virginia Taxpayers Against Fraud Act.

## Jurisdiction And Venue

2.      This action arises under the False Claims Act, 31 U.S.C. § 3729 *et seq.* This Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S. C. § 1331 in that this action arises under the laws of the United States. This Court has subject matter jurisdiction over relators' sexual and racial discrimination claims based on federal question jurisdiction pursuant to Section 706(f) of the Civil Rights Act of 1964, 42 U.S.C. section 2000e-5(f) and pursuant to 28 U.S.C. sections 1331(a) and 1343(a)(3). And this Court has subject matter jurisdiction over the Virginia Taxpayers Against Fraud claims, and wrongful discharge claims, pursuant to 31. U.S.C. § 3732(b).

3.      Venue is proper in the United States District Court for the Western District of Virginia pursuant to 28 U.S.C. §§ 1391(b), and 1391(c), and under 31 U.S.C. 3732(a) because each defendant transacts business within the district, and the acts proscribed by the False Claims Act occurred within the district.

## The Parties

4.      Relator **Megan L. Johnson** is a citizen and resident of the United States and Virginia and resides in Wytheville, Virginia.

5.      Relator **Leslie L. Webb** is a citizen and resident of the United States and Virginia and resides in the Western District of Virginia.

6.      Relator **Kimberly Stafford-Payne** is a citizen and resident of the United States and Virginia and resides in Wytheville, Virginia.

7.      Omitted.

8.      Defendant **Keystone Marion, LLC,** is a Virginia limited liability company

*U.S. ex rels. Webb, et al. v. United Health Services, et al. ✦ Second Amended Complaint ✦ Page 2 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 2 of 31   Pageid#: 738

with its principal office in Nashville, Tennessee.

9.      Defendant **Keystone Education and Youth Services, LLC** ("KEYS") is a

Tennessee limited liability company with its principal office in Nashville, Tennessee.

10.      Upon information and belief, defendants are affiliates of each other and Universal

Health Services, Inc. ("UHS"), a Delaware corporation with hits headquarters in King of Prussia,

Pennsylvania.  Unless otherwise denoted, the three defendants shall be referred to collectively as

"Defendant."  UHS indirectly acquired the other two defendants in or around October 2005.

## Factual Allegations

### A.      Background

11.      On or around September 2004, Defendant began operating Keystone Marion Youth

Center, a residential 48 bed treatment center for boys ages 11-17 who had serious mental health

and behavior problems ("Youth Center").  The Youth Center is located in Smyth County,

Virginia.   Upon information and belief, Relators incorporate paragraphs 14-25, 27(a)-(b) and the

second and third sentences of paragraph 8 of the Government's proposed Amended Complaint

into this Complaint by reference as if set forth herein in full.  Accordingly, upon information and

belief, at least for the period November 1, 2006 through the present, UHS exercised direct

control  over the operations of the Youth Center.

12.       Relators Johnson, Webb and Payne are therapists who were employed by

Defendant at the Youth Center.  Upon information and belief, UHS was an actual and/or de facto

employer of Johnson, Webb and Payne subsequent to October 2005. .

13.      With only a few exceptions, Defendant restricted admission to the Youth Center to

residents who would qualify for reimbursement of their medical costs under the Medicaid

program.

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ◆ *Second Amended Complaint* ◆ *Page 3 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 3 of 31   Pageid#: 739

14. Pursuant to federal requirements governing the Medicaid program, including those in the State Medicaid Manual:

   i. each resident is limited to one individual therapy session per day, and must receive a minimum of three per week;

   ii. to stay eligible each resident has to receive at least 21 group sessions a month;

   iii. only services actually rendered may be billed;

   iv. services must be billed to Medicaid within one year of service.

15. For each thirty-day treatment period for each resident, the treating therapist would prepare a 30-day Medicaid Review ("30-day Report"), which was required to be reviewed and signed by a physician.

16. On December 13, 2004, Defendant hired relator Webb, who had a Master of Social Work degree, to work at the Youth Center as a therapist. .

17. On April 25, 2005, and October 31, 2005, Defendant hired relators Johnson, who had a Master of Art degree, and Payne, who had a Master of Science degree, respectively, to work at the Youth Center as Therapists. During their employment by Defendant, neither Johnson nor Payne were tasked with the internal investigation of fraud against the government.

18. Relator Leslie Webb, Master of Social Work, had privileges at the Youth Center and treated numerous Medicaid residents for psychiatric problems at this facility. During her employment by Defendant, Webb was not tasked with the internal investigation of fraud against the government.

19. Dr. Cervantes was the Medical Director of Youth Center during this period.

20. David Duncan was the Administrator of Youth Center during this period and

*U.S. ex rels. Webb, et al. v. United Health Services, et al. ◆ Second Amended Complaint ◆ Page 4 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 4 of 31   Pageid#: 740

reported directly to Dr. Cervantes.

21.     Kathy Smith was the Administrative Assistant of Youth Center during this period and reported directly to David Duncan.  She was later promoted to Business Office Manager and reported directly to David Duncan.

22.     Keith Lowry was the Clinical Director and Therapist Supervisor of Youth Center during this period and reported directly to David Duncan.

23.     Joseph Beaty was a Licensed Clinical Social Worker of Youth Center during this period and reported directly to Keith Lowry.

**B.     False Medicaid Claims And Attempts By Defendant To Get Relators To Assist In The Fraud.**

24.     Beginning in December 2004 and continuing through the present, Defendant engaged in various activities and techniques to increase improperly and fraudulently the amount of the reimbursement that Defendant received from Medicaid from its operation of the Youth Center, which resulted in Defendant filing or causing to be filed false claims to the Government for Medicaid reimbursement.  These activities and techniques included the following:

a.      Billing Medicaid for services to residents for which there is no supporting documentation that the service was provided.

b.      regularly conducting psycho-therapy group sessions scheduled for fifty minutes for only ten to twenty minutes and billing Medicaid as if the full fifty-minute sessions had been conducted.

c.      conducting all other group therapy sessions by unqualified staff and billing Medicaid as if they were conducted by qualified staff.

d.      regularly billing Medicaid for group therapy sessions that did not occur.

e.      billing Medicaid for a "drive by" five-minute interaction with a resident in a hallway or public room as a thirty-minute individual therapy session.

*U.S. ex rels. Webb, et al. v. United Health Services, et al. ✦ Second Amended Complaint ✦ Page 5 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 5 of 31   Pageid#: 741

f.     provoking ("escalating") a resident so that the resident's reaction would serve to justify a longer length of stay in order to increase the Medicaid reimbursement for that resident.

g.     billing Medicaid for therapy sessions conducted by unlicensed therapists when they were no longer under supervision towards licensure.

h.     having non-clinical staff improperly alter the therapists' records to justify or increase Medicaid reimbursement.

i.     delaying the discharge of residents who were ready for discharge in order to increase Medicaid reimbursement.

j.     deliberately understaffing the Youth Center so that it was impossible to comply with Medicaid standards without all of the therapists working an average of at least 60 hours a week, which only the female therapists did.

k.     inappropriately admitting as residents persons with known tendencies for violence and/or sexual predation and thereby placing the other residents at an unacceptable risk of violence and sexual assault.

l.     physically abusing residents and allowing and/or encouraging other residents to do the same, including inappropriately using physical restraints on residents, sexually exploiting them, and subjecting them to hazing.

m.     failing to respond appropriately to positive test results for illegal drug use by residents.

n.     routinely failing to report resident-on-resident assaults, resident-on-staff assaults, staff-on-resident assaults, and absences by residents without leave

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ✦ *Second Amended Complaint* ✦ *Page 6 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 6 of 31   Pageid#: 742

(AWOL) from the Youth Center to avoid loss of revenue from Medicaid for those residents.

25.     While relators are able to include the identity of some of the specific residents and dates related to the false claims in the compliant, relators are unable to plead all of the details of those claims because the necessary information is in the control and custody of Defendant.

26.     During this time period, in the treatment of the residents, Defendant improperly involved and limited the involvement of the psychiatrists in ways that were illegal, fraudulent, and contrary to Medicaid requirements.  The psychiatrist involved was typically Alfredo Cervantes, M.D.  Those ways included:

   a.     routinely failing to have the psychiatrist conduct the initial assessment of a resident within the first 24 hours of admittance.

   b.     routinely failing to have the psychiatrist complete the Physician's Initial Treatment Plan ("PIT").

   c.     routinely failing to include the psychiatrist in treatment team meetings and/or multi-disciplinary team meetings.

   d.     obtaining the psychiatrist's authorizing signature for Master Treatment Plans ("MTP") and 30 Day Summary/Reviews without first providing the details of the plans and/or summaries for his review.

   e.     obtaining the psychiatrist's authorizing signature on documentation for treatment that had occurred weeks or even months earlier, or for treatment that did not occur at all.

   f.     obtaining the psychiatrist's authorizing signature on back-dated documentation for treatment  that was created weeks or even months after the treatment had occurred, or for treatment that did not occur at all.

   g.     routinely failing to have the psychiatrist on the premises during regular business hours.

   h.     routinely failing to have the psychiatrist properly assess residents prior to admissions.

   i.     routinely failing to have the psychiatrist supervise the therapist.

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ✦ *Second Amended Complaint* ✦ *Page 7 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 7 of 31   Pageid#: 743

j.  routinely failing to have the psychiatrist participate and/or confirm that the therapy sessions were being conducted in accordance with the PIT and MTP's by qualified staff.

k.  routine prescription and administration of drugs to residents on a wholesale basis without regard to the individual circumstances and condition of the individual resident.

27.  From December 2004 through June 2006, Defendant billed Medicaid for the treatment of certain residents even though the 30-day Report, therapy progress notes, master treatment plans, treatment plan review, and other documentation for that resident that were prerequisites for Medicaid reimbursement were nonexistent and/or missing.  Residents for whom services were billed to Medicaid but for which that was no documentation and the periods of service include the following:

a)  P.F.[1]  March 29, April 11, 12, 20, 22, June 29, 2005
b)  J.G.    April 12, 28, May 24, June 26, 2005
c)  J.L.    May 7, 12, 13, June 3, 2005
d)  K.B.    February 1, 9, 11, 14, 15, 16, 2005
e)  M.C.    January 2005 – June 2005

28.  Kathy Smith  ordered the therapists to use "creative writing techniques" in their reports to exaggerate those aspects of a resident that would support diagnoses that would justify a longer length of stay for that resident.

29.  Each therapist was assigned a daily group therapy session to conduct, Monday through Friday.  Although the group therapy sessions were to last for 50 minutes, therapists Keith Lowry, Craig Shay and Joseph Beaty would typically begin a session 30 to 45 minutes later than the scheduled start time, and the session would then last only for the remaining scheduled time

---

[1] Only initials of the residents are disclosed in this complaint to preserve the confidentiality of their treatment.  Relators have knowledge of their first and last names.

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ✦ *Second Amended Complaint* ✦ *Page 8 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 8 of 31   Pageid#: 744

— 10 to 20 minutes. However, those therapists would document the session as having been conducted for the full 50 minutes and Defendant billed Medicaid accordingly.

30.     Defendant, through its employees and agents, specifically, but not limited to, David Duncan, Kathy Smith, Rebecca Young, Keith Lowry, Joseph Beaty, Dr. Alfredo Cervantes and Christine Furches, repeatedly directed the therapists, including Webb, Payne, and Johnson, to report fraudulently that therapy sessions were being conducted even though the sessions were not conducted at all and/or completed, purportedly as an effort to "reduce our workloads." Defendant billed Medicaid for sessions that were not conducted at all.

31.     Defendant, through its employees, specifically, but not limited to, David Duncan, Kathy Smith and Keith Lowry, directed the therapists, including Webb, Payne, and Johnson,  to falsify documentation by writing therapy notes for sessions that did not occur; to create therapy notes for the male therapists for sessions that were not completed and to complete reports for residents who had not yet been seen for therapy and to falsify many aspects of reporting in the documentation.  For example, for the two-week period beginning April 21, 2006, residents whose records show them participating in therapy sessions that did not occur include the following: C.B., S.H., B.H., M.H., J.I., R.S., E.B.

32.     Defendant also directed the therapists, including Webb, Payne, and Johnson, to complete therapy notes for what was referred to as "drive-by" therapy, a term coined by Joseph Beaty and Keith Lowry.  "Drive-by" therapy was basically stopping a client in the hallway and speaking with them for a period of less than 5 minutes and reporting it as a completed 20-30 minute therapy session.

33.     On July 1, 2006, Defendant terminated the required supervision of relator Johnson towards licensure that was being provided by Keith Lowry.  However, Defendant continued to

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ✦ *Second Amended Complaint* ✦ *Page 9 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 9 of 31   Pageid#: 745

have relator Johnson conduct therapy sessions and to bill Medicaid for them even though those sessions were ineligible for Medicaid reimbursement because of the lack of supervision towards licensure.

34.     On April 7, 2006, Defendant terminated the required supervision of relator Webb towards licensure that was being provided by Laura Davis Gage.  However, Defendant continued to have relator Webb conduct therapy sessions and to bill Medicaid for them even though those sessions were ineligible for Medicaid reimbursement because of the lack of supervision towards licensure.

35.     Defendant delayed the discharges of residents to the beginning of the next month only so Medicaid reimbursement would thereby be increased since Medicaid would pay through the end of the month and the occupancy levels would reflect the expectations of the Corporate office.  Residents whose discharges were delayed in this way included the following:

J.R., P.H., R.S., J.I.

36.     Defendant, acting through David Duncan and other staff, would purposefully "escalate" residents to decompensation (reducing the sense of mental balance) to achieve approval for longer lengths of stay and thereby increase the reimbursement from Medicaid. Duncan would also encourage negative behavior by residents by rewarding negative behavior and ignoring positive behavior of the residents.  Those residents who were treated in this manner included the following: E.B., R.S, J.R., K.M., D.J., J.I., R.S., and J.J.

37.     Kathy Smith, the Administrative Assistant, demanded that all therapists provide her with their computer passwords, which would allow her or other unauthorized persons to have access to, and to rewrite, a therapist's reports after the therapist had signed and submitted the documentation.  Smith also demanded that the therapists remove page numbers from their reports

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ✦ *Second Amended Complaint* ✦ *Page 10 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 10 of 31   Pageid#: 746

to facilitate other staff members turning in delinquent reports and/or making it less noticeable to the therapists and to Medicaid that sections of their reports were being recreated by non-clinical staff who were not directly involved in the care of the residents.

38.     During Relators' employment at Youth Center, they were provided with identification badges that were used to swipe through the time clock to document work hours. Initially, relators were told by administration to swipe upon arrival and departure.  However, administration later instructed relators to only swipe once daily, upon arrival.  Then again relators were asked to swipe twice per day at any time during the day, and then it was change back to swipe only once a day - making it impossible for administration to document the amount of hours for any employee during a given day

39.     Upon information and belief, Defendant is continuing to engage in the practices described above to the present.

40.     The above-mentioned practices of Defendant constituted a substantial failure to deliver the services to the residents for which it was paid by Medicaid.  Instead, Defendant managed the Youth Center as a correctional facility rather than as a therapeutic one. Consequently, residents were typically harmed, rather than helped, by their stay at the Youth Center.  Thus, the billings for those "services" that Defendant submitted to Medicaid were inherently false and/or fraudulent.

**C.     Relators' Investigation, Reporting And Exposure Of, And Their Opposition To, Defendant's Medicaid Fraud.**

41.     During their entire periods of employment with Defendant, each relator — Webb, Johnson, and Stafford-Payne**,** knew that the Defendant derived essentially all of its revenues for the Youth Center from governmental sources, namely Virginia Medicaid.  Upon information and

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ❖ *Second Amended Complaint* ❖ *Page 11 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 11 of 31   Pageid#: 747

belief, the Defendant was aware at all relevant times that each relator knew that Defendant derived essentially all of its revenues for the Youth Center from Virginia Medicaid.

42.    While they were employed by the Youth Center, Webb, Payne and Johnson learned of the Defendant's Medicaid fraud detailed above through their investigations. Some of the steps Webb, Payne and Johnson took to investigate the Medicaid fraud, to report and expose it both internally and externally, and to oppose it are set forth below.

43.    In response to Defendant's directives that the therapists, including, Webb, Johnson and Payne, 1) participate in fraudulent record keeping; 2) report fraudulently that therapy sessions were being conducted even though the session were not conducted at all and/or completed; 3) falsify documentation and therapy notes for "drive-by" five minute therapy sessions; 4) falsely alter documentation and change reporting periods that we more than one year old to a date less than one year old; and 5) use creative writing techniques to justify longer lengths of stay, Webb, Johnson and Payne each refused to obey each of those directives, and expressed their refusals verbally to Defendant's management officials at the Youth Center, thereby making Defendant aware of their refusals.

44.    In March 2006, Christine Furches, Third Shift Supervisor and Peter Blair, Medical Records Clerk, ordered Relator Webb to change the reporting periods on reports that were more than one year old to a date less than one year old so Defendant could submit a request for reimbursement from Medicaid for those services. Webb verbally refused and made Defendant aware of her refusal.

45.    In Spring 2006, relators Payne, Johnson and Webb observed that therapist staffing was very low. Payne, Johnson and Webb became suspicious that Defendant was not conducting the Medicaid-mandated minimum number of therapy sessions for some residents. Payne,

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ❖ *Second Amended Complaint* ❖ *Page 12 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 12 of 31   Pageid#: 748

Johnson and Webb investigated. They discovered that Defendant was instructing therapists to include more than 10 residents in therapy groups, even though Medicaid regulations limited the group to 10 residents. They learned from the floor staff that residents were being left on their units while the others were taken to scheduled group therapy sessions. In furtherance of their investigation, relators Webb and Payne reviewed the residents' files and discovered that documentation falsely noting that those residents who were left in their rooms had received therapy when they did not.

46.     Approximately April 24 - May 20, 2006, Payne and Webb expressed their concern to Defendant's documentation supervisor Deborah Fahr that Defendant had been engaging in false billing since the minimum number of therapy sessions required by Medicaid had not been occurring. Sometime in Spring 2006, Johnson also expressed similar concerns to Deborah Fahr.

47.     In May 2006, Realtor Webb was approached by Peter Blair, who asked her to reprint and resign a report that had been turned in approximately February 2006, approximately three months prior for resident C. B., which Webb had been told had been lost.

48.     On August 8, 2006, Kathy Smith directed relator Johnson to complete therapy notes for clients that she had not seen. Johnson refused, and after her refusal Smith told Johnson that UHS' Regional Vice President, Buddy Turner was coming to the facility to speak with Johnson regarding her failure to comply with the completion of the documentation.

49.     On May 25, 2006, Kathy Smith directed relator Johnson to complete a Master Treatment Plan and 30-day review for a resident that had been admitted to the facility in March 2006. Johnson refused, and after her refusal Kathy Smith stated that she and Rebecca Young

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ❖ *Second Amended Complaint* ❖ *Page 13 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 13 of 31   Pageid#: 749

would compile these documents and place them in the chart.   Johnson investigated and became aware that the reports were fraudulently prepared by non-clinical staff.

50.     In response to Webb's, Payne's and Johnson's  concerns that there were not enough therapists to perform the Medicaid-mandated minimum number of therapy sessions for the residents, documentation supervisor Deborah Fahr, Ph.D., performed a detailed analysis and concluded that if the requirements according to the caseload and Medicaid guidelines were being met, the therapists could not complete their tasks in less than 60 hours per week.  However, Joseph Beaty and Keith Lowry did not consistently work more than 40 hours a week, so that Fahr's analysis confirmed Webb's and Payne's concerns were real.

51.     Webb, Payne and Johnson obtained confirmation directly from the residents under the care of Joseph Beaty and Keith Lowry that Beaty and Lowry were not  completing the number of individual therapy sessions with them that were required under Medicaid regulations.

52.     Dr. Cervantes, Medical Director of Youth Center instructed Relator Webb to complete a 30-day Medicaid Review for the residents to whom she had given only two of the approximate 36 sessions required for Medicaid billing.

53.     At various times during the first several months of 2006, Webb told Defendant's management team members Keith Lowry, Dr. Deborah Fahr, Rebecca Young, and Kathy Smith, Webb expressed her concern that some of Defendant's techniques for delivering services and documenting them for Medicaid reimbursement were, in the words that Webb used, "illegal," and that they involved "falsely backdating" records.

54.     On April 5, 2006, Webb and Johnson met with, and hired, attorney Randy Jones, to consult with them about their legal claims against Defendant, including claims arising out of Defendant's Medicaid fraud and Defendant's insistence that they participate in it.  Their

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ❖ *Second Amended Complaint* ❖ *Page 14 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 14 of 31   Pageid#: 750

discussion included relators' allegations concerning Medicaid fraud at the Youth Center. Shortly after this meeting, Payne also met with and hired Jones to consult with her about the same issues. They also discussed the legal implications of Webb and Johnson secreting false documentation discovered during their investigations from the Youth Center.

55. Upon information and belief, Jones contacted Defendant's corporate attorney Lisa Barrett concerning Webb, Payne and Johnson.

56. On April 17, 2006, relator Webb met with Defendant's corporate attorney Lisa Barrett. During their meeting, Webb began telling Barrett her allegations concerning Medicaid fraud at the Youth Center. Barrett cut Webb off and indicated that she did not want to discuss that subject, but wanted to discuss only her sexual discrimination allegations.

57. On the same day, April 17, 2006, relator Payne also met with Defendant attorney Lisa Barrett and also began to inform Barrett of her allegations concerning Medicaid fraud at the Youth Center. Barrett indicated to Payne, like she did to Webb, that she did not want to include those allegations in the discussion.

58. Between April 21, 2006 and May 3, 2006 Relator Webb was on vacation. Upon her return on May 4, Keith Lowry and Kathy Smith directed Webb to complete therapy notes for her clients for her vacation period. However, Webb obviously did not conduct therapy sessions while she was on vacation. Thus, Defendant and Webb both understood that Defendant was instructing Webb to prepare false records. And both Defendant and Webb understood that Defendant was requiring Webb to prepare false records to support fraudulent Medicaid claims and to get those claims paid. Both Defendant and Webb understood that Defendant was thereby requiring her to commit a criminal act. Relator Webb opposed Defendant's fraudulent, illegal

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ❖ *Second Amended Complaint* ❖ *Page 15 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 15 of 31   Pageid#: 751

and criminal acts by insubordinately refusing to create false documentation for sessions that had not occurred during her absence.

59.     Later in May, Webb became suspicious that Defendant might have used another of its employees to the prepare the false records that Defendant had directed her to produce.   She investigated, retrieving and reviewing the residents' charts for those residents to whom she was providing therapy.  She discovered several records in those charts that she had prepared had been falsely altered — whited-out and rewritten by someone other than herself.

60.     Webb made copies of some of the incriminating records and retained them outside the Youth Center.

61.     During Spring of 2006, Payne, Johnson and Webb telephoned Virginia Human Rights investigators Deb Jones and Nan Neese and informed them of actions that Defendant was taking to facilitate Medicaid fraud, such as fraudulently altering records and creating false records.   Upon information and belief, Jones and/or Neese referred those allegations of Medicaid fraud Virginia's Department of Medical Assistance Services (DMAS).  DMAS administers Medicaid in Virginia.

62.     In late April or early May 2006, DMAS (Medicaid)  investigator Steven Patrick came to the Youth Center and met with Payne and Johnson (Webb was out of the office on vacation). On information and belief, he took this action as a result of a referral of relators' allegations by Jones and Neese.  Patrick met that day with Payne individually and inquired about the situation at the Youth Center.  She disclosed at length the fraudulent and illegal acts that Defendant was engaging in at the Youth Center to perpetuate Medicaid fraud, including the fraudulent backdating of documents, billing for services that had not been rendered, and the creation of therapy notes for sessions that had not taken place.  Patrick then met with Johnson,

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ❖ *Second Amended Complaint* ❖ *Page 16 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 16 of 31   Pageid#: 752

who also disclosed to Patrick fraudulent and illegal acts that Defendant was engaging in at the Youth Center to perpetuate Medicaid fraud, including the fraudulent backdating of documents. On information and belief, the investigation of Medicaid fraud was one of Patrick's job duties.

63.     At the time Patrick met with Payne and Johnson, Defendant was aware that the meetings were taking place.  Upon information and belief, Defendant believed at that time that Payne and Johnson were reporting to Patrick Defendant's activities facilitating Medicaid fraud.

64.     Prior to the time that she was discharged by defendant, Webb telephoned Patrick and expressed her concerns regarding the illegal acts that Defendant was taking and scheduled a meeting with him to take place in the latter half of June 2006.

65.     In the latter part of May 2006, Webb, Payne and Johnson met with Dr. Cervantes and expressed at great length their concerns about and opposition to the "falsifying of documents," and the creative writing techniques that Defendant was directing that Webb, Payne, Johnson, and the other therapists engage in to fraudulently justify a longer lengths of stay for the residents.

66.     In meetings with Youth Center's management team, which included Keith Lowry, Dr. Deborah Fahr, Rebecca Young, Laura Lincoln and Kathy Smith, that occurred several times in 2006 prior to Webb's discharge, Webb expressed her concern that Defendant's  techniques for the Youth Center's delivery of services and documentation for Medicaid reimbursement were "illegal," and that Defendant was "falsely backdating" records

67.     In or around May 2006, Kathy Smith warned Webb that "you will complete reports for Joe Beaty" and change the dates and embellish the behaviors.

68.     In or around May 2006, Rebecca Young and Kathy Smith warned Payne that she better backdate the documents so that Defendant could "get paid."

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ✦ *Second Amended Complaint* ✦ *Page 17 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 17 of 31   Pageid#: 753

69.     In or around May 2006, Rebecca Young instructed Payne to fabricate a 30-day review for one of Webb's residents.  Both Payne and Young knew that Young was instructing Payne to do this in order for Defendant to get Medicaid monies to which it was not entitled. Payne refused, and told Young that she would not create a report for a resident that she did not see.   Young then reprimanded Payne by rhetorically asking: "Do you want to see a copy of your job responsibilities?"

70.     In or around May 2006, Kathy Smith and Rebecca Young told relator Webb that "the documentation [of the therapy sessions] was more important than the [actual] therapy sessions."  This  message was implied by Smith and Young to relator Johnson on numerous occasions.

71.    On June 2, 2006, Deborah Jones and Nan Neese came to the Youth Center and conducted a random chart audit that confirmed the allegations of Webb, Payne and Johnson (which they had conveyed to Jones and Neese earlier)  that documents that had been altered improperly by non-clinical staff members were repeatedly being placed in the residents' charts.

72.     On July 1, 2006, in retaliation for Johnson's refusal to falsely back date and create therapy notes for therapies that she had not conducted, Keith Lowry terminated her supervision toward licensure.

73.      On July 13, 2006, Kathy Smith warned Johnson: "If you don't get these things [falsified reports for therapy sessions that did not occur] to me then you can answer to corporate yourself."

74.     On August 4, 2006,  Johnson expressed her concern to Laura Lincoln, Defendant's director of human resources at the Youth Center, that Defendant was acting

*U.S. ex rels. Webb, et al. v. United Health Services, et al. ❖ Second Amended Complaint ❖ Page 18 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 18 of 31   Pageid#: 754

"unethically" in "just getting money off" the residents by conducting "drive-by" therapy sessions and "documenting falsely" the services rendered.

**C.    Defendant's Sexual Harassment Of Webb And Payne, Sexual Discrimination Against Webb, Payne and Johnson, And Racial Discrimination Against Johnson.**

75.    During her employment, Webb was sexually harassed by Joe Beaty,  whose duties included supervising Webb's clinical supervision for licensure.  Beaty made sexually explicit comments to her, discussed watching pornographic movies with his wife, engaged in inappropriate touching and sent her e-mails with sexually implicit content.

76.    During her employment, Webb was discriminated against due to her sex in the following ways:.

(a)    Office space and computers provided to her were inferior to those provided to male therapists;

(b)    Documentation of female therapists' work was "lost" by Defendant's utilization review staff and later found in its possession in an attempt to sabotage the performance of female therapists, including Webb;

(c )    Documentation requirements and workload was greater than for male therapists;

(d)    The security access for her office was less than for male therapists;

(e)    Joe Beaty was provided with a transcriptionist while female therapists were not; and

(f)    Female therapists were paid less than similarly situated male therapists.

77.    At the time of the discharge, Webb was performing at a level that met her employer's legitimate job expectations.

78.    From November 2005 through March 2006, Payne was also sexually harassed by

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ✦ *Second Amended Complaint* ✦ *Page 19 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 19 of 31   Pageid#: 755

Beaty.  Beaty made sexually explicit comments to her, made solicitations for neck massages, showed her clothing on the Internet that he thought would look good on her and sent inappropriate e-mails.  During a portion of that time, he was Payne's supervisor.

79.     During her employment, Payne was discriminated against due to her sex in the following ways:

      (a)     Office space and computers provided to her were inferior to those provided to male therapists;

      (b)     Documentation of female therapists' work was "lost" by Defendant's utilization review staff and later found in its possession in an attempt to sabotage the performance of female therapists, including Payne;

      (c )     Payne and other female therapists were expected to carry case loads of 8 to 12 residents, while Beaty, a male therapist, was required to carry a case load of only four residents;

      (d)     Documentation of female therapists' work was "lost" by Defendant's utilization review staff  in an attempt to sabotage the performance of female therapists, including Payne; and

      (e)     Denied sick leave.

80.     Payne was subject to various on-the-job forms of sexual harassment and sexual discrimination by co-workers and supervisors.  On information and belief, Payne alleges that the male employees were not subjected to such treatment.  Defendant condoned and ratified this misconduct and took no action to stop it, although Defendant was aware of such misconduct.

81.     After Payne reported the harassment and Beaty was terminated by corporate office

*U.S. ex rels. Webb, et al. v. United Health Services, et al. ✦ Second Amended Complaint ✦ Page 20 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 20 of 31   Pageid#: 756

personnel, Defendant retaliated against Payne, including by refusing to hire a replacement for Beaty and shifting his caseload onto Payne and other female therapists.

82.     During her employment, Johnson was discriminated against due to her sex and race in the following ways:

(a)     Office space and computers provided to her were inferior to those provided to male therapists;

(b)     Documentation of female therapists' work was "lost" by Defendant's utilization review staff in an attempt to sabotage the performance of female therapists, including Johnson;

( c)     Documentation requirements and workload were greater than for male therapists;

(d)     Black therapists were paid less than similarly situated white therapists; and

(e)     Johnson received fewer opportunities for supervision toward licensure than similarly situated white therapists.

83.     Johnson was subject to various on-the-job forms of race and sexual discrimination by co-workers and supervisors.  On information and belief,  male employees were not subjected to such treatment.  Defendant condoned and ratified this misconduct and took no action to stop it, although the defendant was aware of such misconduct.

84.     Not used.

**D.     Defendant's Discharges Of Webb, Payne, and Johnson**

85.     As another act of sex discrimination, and/or  because of Webb's investigation of Defendant's Medicaid fraud, her expressions of concern about it to Defendant's management, her reporting and exposure of it to government investigators, and/or her opposition to it and

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ◆ *Second Amended Complaint* ◆ *Page 21 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 21 of 31   Pageid#: 757

insubordinate refusal to participate in it, Defendant retaliated against Webb by discharging her on June 13, 2006. On June 5, 2006, as a result of Defendant's improper actions, which created an intolerable work environment for her and the impression that her firing was imminent, Webb felt forced to tell Defendant that she was going to resign as of the end of June 2006.

86.    As a result of Defendant's improper actions, which created an intolerable work environment for her and the impression that her firing was imminent, Payne was constructively discharged by Defendant when she was forced to resign on June 16, 2006. Defendant forced her to resign as another act of sex discrimination and/or in retaliation for Payne's investigation of Defendant's Medicaid fraud, her expressions of concern about it to Defendant's management, her reporting and exposure of it to government investigators, and/or her opposition to it and insubordinate refusal to participate in it.

87.    As another act of sex and/or race discrimination, and/or because of Johnson's investigation of Defendant's Medicaid fraud, her expressions of concern about it to Defendant's management, her reporting and exposure of it to government investigators, and/or her opposition to and refusal to participate in it, including her refusal to falsely back date and create therapy notes for therapies that she had not conducted, Defendant discharged Johnson on August 22, 2006.

88.    At the time of their respective discharges, Webb, Payne and Johnson were performing at a level that met their employer's legitimate job expectations.

### Count I -- Webb's False Claims Act Retaliation Claim

89.    Relator Webb hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

*U.S. ex rels. Webb, et al. v. United Health Services, et al. ❖ Second Amended Complaint ❖ Page 22 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 22 of 31   Pageid#: 758

90.     Relator Webb was discriminated against, and discharged from her employment by Defendant, because of lawful acts done by Webb in furtherance of an action and/or possible action under the False Claims Act and/or investigation of False Claim Act violations that could serve as a basis of an action under the False Claim Act.

91.     The actions of Defendant were intentional, violated 31 U.S.C. § 3730 (h) and damaged relator Webb.

92.     Webb suffered damages from Defendant's actions that include, but are not limited, to the loss of her job, loss of income, mental anguish, and emotional and mental distress.

93.     Therefore, relator Webb is entitled to the relief provided by 31 U.S.C. § 3730(h), including damages in an amount to be determined at trial.

### Count II — Webb's Virginia Taxpayers Against Fraud Act Retaliation Claim

94.     Relator Webb hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

95.     Relator Webb was discriminated against in the terms and conditions of her employment, and ultimately discharged because she opposed the actions of Defendant as set forth in this Complaint that constituted practices referenced in Virginia Code section 8.01-216.3, and otherwise took actions that qualified her for relief under section 8.01-216.8 of the Virginia Code.

96.     Therefore, Webb is entitled to the relief provided by Va. Code Ann. section 8.01-216.8.

### Count III -- Johnson's False Claims Act Retaliation Claim

97.     Relator Johnson hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ❖ *Second Amended Complaint* ❖ *Page 23 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 23 of 31   Pageid#: 759

98.     Johnson was discriminated against, and discharged from her employment by Defendant, because of lawful acts done by Johnson in furtherance of an action and/or possible action under the False Claims Act and/or investigation of False Claim Act violations that could serve as a basis of an action under the False Claim Act.

99.     The actions of Defendant were intentional, violated 31 U.S.C. § 3730 (h) and damaged relator Johnson.

100.     Johnson suffered damages from Defendants' actions that include, but are not limited to, the loss of her job, loss of income, mental anguish, and emotional and mental distress.

101.     Therefore, relator Johnson is entitled to the relief provided by 31 U.S.C. § 3730(h), including damages in an amount to be determined at trial.

**Count IV — Johnson's  Virginia Taxpayers Against Fraud Act Retaliation Claim**

102.     Relator Johnson hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

103.     Relator Johnson was discriminated against in the terms and conditions of her employment, and ultimately discharged because she opposed the actions of Defendant as set forth in this Complaint that constituted practices referenced in Virginia Code section 8.01-216.3, and otherwise took actions that qualified her for relief under section 8.01-216.8 of the Virginia Code.

104.     Therefore, Johnson is entitled to the relief provided by Va. Code Ann. section 8.01-216.8.

**Count V -- Payne's False Claims Act Retaliation Claim**

105.     Relator Payne hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

106.     Payne was discriminated against, and discharged from her employment by

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ❖ *Second Amended Complaint* ❖ *Page 24 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 24 of 31   Pageid#: 760

Defendant because of lawful acts done by Payne in furtherance of an action and/or possible action under the False Claims Act and/or investigation of False Claim Act violations that could serve as a basis of an action under the False Claim Act.

107. The actions of defendant were intentional, violated 31 U.S.C. § 3730 (h) and damaged relator Payne.

108. Payne suffered damages from Defendants' actions that include, but are not limited to, the loss of her job, mental anguish, and emotional and mental distress.

109. Therefore, relator Payne is entitled to the relief provided by 31 U.S.C. § 3730(h), including damages in an amount to be determined at trial.

**Count VI — Payne's Virginia Taxpayers Against Fraud Act Retaliation Claim**

110. Relator Payne hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

111. Relator Payne was discriminated against in the terms and conditions of her employment, and ultimately discharged because she opposed the actions of Defendant as set forth in this Complaint that constituted practices referenced in Virginia Code section 8.01-216.3, and otherwise took actions that qualified her for relief under section 8.01-216.8 of the Virginia Code.

112. Therefore, Payne is entitled to the relief provided by Va. Code Ann. section 8.01-216.8.

**Count VII — Webb's Sex Discrimination Claim: Disparate Treatment**

113. Webb hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

114. The actions of Defendant constitute unlawful sex discrimination.

115. Webb has exhausted her administrative remedies for her sexual discrimination

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ✦ *Second Amended Complaint* ✦ *Page 25 of 31*

Case 1:07-cv-00054-JPJ-PMS    Document 99    Filed 11/10/10    Page 25 of 31    Pageid#: 761

claims and has received her right to sue letter from the U.S. Equal Employment Opportunity Commission.

## Count VIII — Webb's Sexual Harassment Claim

116.     Webb hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

117.     The actions of Defendant constitute unlawful sexual harassment.

## Count IX — Payne's Sex Discrimination Claim: Disparate Treatment

118.     Payne hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

119.     The actions of Defendant constitute unlawful sex discrimination.

120.     Payne has exhausted her administrative remedies for her sexual discrimination claims and has received her right to sue letter from the U.S. Equal Employment Opportunity Commission.

## Count X — Payne's Sexual Harassment Claim

121.     Payne hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

122.     The actions of Defendant constitute unlawful sexual harassment.

## Count XI — Johnson's Sex Discrimination Claim: Disparate Treatment

123.     Johnson hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

124.     The actions of Defendant constitute unlawful sex discrimination.

125.     Johnson has exhausted her administrative remedies for her

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ❖ *Second Amended Complaint* ❖ *Page 26 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 26 of 31   Pageid#: 762

sexual discrimination claims and has received her right to sue letter from the U.S. Equal

Employment Opportunity Commission.

### Count XII — Johnson's Racial Discrimination Claim

126.     Johnson hereby incorporates and realleges herein the previous paragraphs as if

fully set forth herein.

127.     The actions of Defendant constitute unlawful race discrimination.

128.     Johnson has exhausted her administrative remedies for her

 racial discrimination claims and has received her right to sue letter from the U.S. Equal

Employment Opportunity Commission.

### Count XIII — Webb's Virginia Wrongful Discharge Claim

129.     Webb hereby incorporates and realleges herein the previous paragraphs as if fully

set forth herein.

130.     By directing Webb in May 2006 to participate in Virginia Medicaid fraud by

ordering her to create false records, and to otherwise falsify documentation for submission to

Virginia Medicaid in order to get Medicaid funds, Defendant was ordering Webb to commit acts

that would violate both federal and state criminal statutes, and that therefore would constitute a

criminal act under both the United States and Virginia Code.

131.     Defendant's orders to Webb that she  participate in the fraud by committing

criminal acts (in an environment of systemic criminal fraud being committed on a daily basis for

months by Defendant), and her insubordinate refusal to do so, rendered  her continued

employment intolerable to her (and to any reasonable person) and she was forced to announce her

resignation.  Because of her insubordinate refusal to obey Defendant's orders to participate in the

Medicaid fraud, Defendant fired Webb.

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ❖ *Second Amended Complaint* ❖ *Page 27 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 27 of 31   Pageid#: 763

132.    Accordingly, Defendant fired Webb because of her refusal to engage in criminal

acts.

133.    Webb suffered damages from Defendant's actions that include, but are not

limited, to the loss of her job, loss of income, mental anguish, and emotional and mental distress.

134.    Webb suffered and continues to suffer from Defendant's actions that included,

willful, wanton and intentional conduct based on her refusal to engage in fraudulent activities.


**Count XIV — Payne's Virginia Wrongful Discharge Claim**

135.    Payne hereby incorporates and realleges herein the previous paragraphs as if fully

set forth herein.

136.    By directing Payne in Spring 2006 to participate in Virginia Medicaid fraud by

ordering her to create a false records and to otherwise falsify documentation for submission to

Virginia Medicaid in order to get Medicaid funds, Defendant was ordering Payne to commit an

acts that would violate both federal and state criminal statutes, and that therefore would

constitute a criminal act under both the United States and Virginia Code.

137.    Defendant's order to Payne that she actively participate in the fraud by

committing criminal acts (in an environment of systemic criminal fraud being committed on a

daily basis for months by Defendant), and her insubordinate refusal to do so, rendered her

continued employment intolerable to her (and to any reasonable person) and she was forced to

resign.

138.    Accordingly, Defendant constructively discharged Payne because of her

refusal to engage in criminal acts.

139.    Payne suffered damages from Defendant's actions that include, but are not

limited, to the loss of her job, loss of income, mental anguish, and emotional and mental distress.

*U.S. ex rels. Webb, et al. v. United Health Services, et al. ✦ Second Amended Complaint ✦ Page 28 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 28 of 31   Pageid#: 764

140.     Payne suffered and continues to suffer from Defendant's actions that included, willful, wanton and intentional conduct based on her refusal to engage in fraudulent activities.

### Count XV — Johnson's Virginia Wrongful Discharge Claim

141.     Johnson hereby incorporates and realleges herein the previous paragraphs as if fully set forth herein.

142.     By directing Johnson in July 2006 to participate in Virginia Medicaid fraud by ordering her to create a false records, and to otherwise falsify documentation for submission to Virginia Medicaid in order to get Medicaid funds, Defendant was ordering Johnson to commit an act that would violate both federal and state criminal statutes, and that therefore would constitute a criminal act under both the United States and Virginia Code.

143.     Defendant's order to Johnson that she actively participate in the fraud by committing criminal acts (in an environment of systemic criminal fraud being committed on a daily basis for months by Defendant), and her insubordinate refusal to do so, Defendant's fired relator Johnson.

144.     Johnson suffered damages from Defendant's actions that include, but are not limited, to the loss of her job, loss of income, mental anguish, and emotional and mental distress.

145.     Johnson suffered and continues to suffer from Defendant's actions that included, willful, wanton and intentional conduct based on her refusal to engage in fraudulent activities.

**Wherefore,** with respect to FCA and VTAFA claims asserted in the Governments' Complaint in this action, the Relators request that this Court grant the following relief:

(a)     That Relators be awarded 25%, but in no event less than 15%, of the amount of any judgment rendered on those claims, or, in the event that the claims are settled,  of the amount of the total settlement of those claims;

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ❖ *Second Amended Complaint* ❖ *Page 29 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 29 of 31   Pageid#: 765

(b)     That the Relators be awarded all costs incurred in this action, including reasonable attorneys' fees; and

(e)     That the Relators receive all other relief, both at law and at equity, as this Court determines is appropriate.

**Wherefore,** with respect to Counts I, III, and V, Relators request that the Court grant the following relief:

(a)     That Relators be awarded all the relief to which they are entitled pursuant to 31 U.S.C. § 3730 (h), including personal injury damages for emotional and mental distress, two times their back pay, interest on the back pay, front pay or reinstatement, attorneys fees and litigation costs; and

(b)     Such other relief as the Court finds appropriate.

**Wherefore,** with respect to Counts II, IV, and VI, Relators request that the Court grant them all of the relief to which they are entitled under section 8.01-216.8 of the Virginia Taxpayers Against Fraud Act.

**Wherefore**, with respect to the Counts VII and VIII, Relator Webb requests that the Court grant her the following relief:

(a)     compensatory damages;

(b)     front pay, back pay,  pre-judgment and post-judgment interest, her attorneys' fees and costs expended in this action; and

(c)     Such further relief as the Court finds appropriate.

**Wherefore**, with respect to the Counts IX and X,  Relator Payne requests that the Court grant her the following relief:

(a)     compensatory damages;

(b)     front pay, back pay,  pre-judgment and post-judgment interest, her attorneys' fees and costs expended in this action; and

(c)     Such further relief as the Court finds appropriate.

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ❖ *Second Amended Complaint* ❖ *Page 30 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 30 of 31   Pageid#: 766

**Wherefore**, with respect to the Counts XI and XII, Relator Johnson requests that the Court grant her the following relief:

(a)      compensatory damages;

(b)      front pay, back pay, pre-judgment and post-judgment interest, her attorneys' fees and costs expended in this action; and

(c)      Such further relief as the Court finds appropriate.

**Wherefore,** with respect to Count XIII, Relator Webb requests that the Court grant her compensatory damages and punitive damages in the amounts that the jury determines.

**Wherefore,** with respect to Count XIV, Relator Payne requests that the Court grant her compensatory damages and punitive damages in the amounts that the jury determines.

**Wherefore,** with respect to Count XV, Relator Johnson requests that the Court grant her compensatory damages and punitive damages in the amounts that the jury determines.

**A TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

LESLIE L. WEBB
MEGAN L. JOHNSON
KIMBERLY STAFFORD-PAYNE


/s/ Mark T. Hurt
Mark T. Hurt (VSB#36380)
159 West Main Street
Abingdon, VA 24210
(540) 623-0808 Phone
(540) 623-0212 Fax

Daniel R. Bieger (VSB# 18456)
Copeland & Bieger
212 W. Valley Street
Abingdon VA 24212
(276) 628-9525 Phone

Counsel for Relators

*U.S. ex rels. Webb, et al. v. United Health Services, et al.* ✦ *Second Amended Complaint* ✦ *Page 31 of 31*

Case 1:07-cv-00054-JPJ-PMS   Document 99   Filed 11/10/10   Page 31 of 31   Pageid#: 767