IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNIVERSAL HEALTH SERVICES, INC., et al., <br><br> Defendants. | **MEMORANDUM OPINION** <br> Civil Action No. 1:07cv000054 |

This matter is before the undersigned on Defendants' Motion To Compel The Commonwealth To Produce Documents And For Sanctions, (Docket Item No. 236). Based on the arguments and representations of counsel presented at the July 28, 2011, hearing, and for the reasons stated below, the Motion will be granted in part.

*I. Background*

This action was filed under seal on June 14, 2007, by three therapists, Megan Johnson, Leslie Webb and Kimberly Stafford-Payne, ("Relators"), who had been employees of Marion Youth Center between 2004 and 2006. The Relators claimed that Universal Health Services, Inc., Keystone Marion, LLC, and Keystone Education And Youth Services, LLC, all doing business as Keystone Marion Youth Center, had discriminated against them in their employment on the

basis of race and/or gender. The Relators also alleged that Marion Youth Center, beginning in December 2004 and continuing until "the present," had submitted false claims to the Virginia Medicaid Program in violation of the federal False Claims Act and the Virginia Fraud Against Taxpayers Act. The seal was partially lifted on August 1, 2007, to allow the Relators to serve their Complaint on the Commonwealth of Virginia. The Relators' Complaint remained under seal while the federal and state governments, ("Government"), investigated their claims and decided whether to intervene in the case. The Government gave the court notice of election to intervene on November 4, 2009.

On February 28, 2011, the defendants filed a motion to compel the Commonwealth to produce documents relating to complaints of Medicaid fraud that the Relators alleged they had made against Keystone Marion Youth Center to the Commonwealth, including its licensing agency, the Department of Behavioral Health and Developmental Services, ("DBHDS")[1]. (Docket Item No. 135.) The Commonwealth had objected to producing documents from any state agency other than the Department of Medical Assistance Services, ("DMAS"), in discovery in this case. The objections centered around the argument that the Commonwealth, although a party in the case, did not have "control" of the documents of state agencies other than those of DMAS. The Commonwealth did not raise any objection, at that time, based on the production of DBHDS documents being unduly burdensome.

---

[1] Prior to July 1, 2009, the DBHDS was known as the Department of Mental Health, Mental Retardation and Substance Abuse Services, ("DMHMRSAS").

By Order entered March 22, 2011, the court granted the motion to compel in part and ordered the Commonwealth to produce the following documents by no later than April 6, 2011:

> Any and all documents in the possession, custody or control of any of the Commonwealth of Virginia's departments or agencies, including, but not limited to, the Department of Behavioral Health and Developmental Services, ("DBHDS"), and its Office of Licensing, Office of Human Rights and Office for Protection and Advocacy, regarding any complaints alleging Medicaid fraud against the Keystone Marion Youth Center, ("KMYC"), made by any person, including, but not limited to, Megan Johnson, Leslie Webb, Kimberly Stafford-Payne and Barbara Jones, from October 1, 2005 through March 2, 2010….

On April 6, 2011, the date the Commonwealth's production was due, counsel for the parties contacted the court by telephone regarding the Commonwealth's position that it could not produce the DBHDS documents as ordered because to do so would be unduly burdensome. The court orally instructed counsel for the Commonwealth that the Commonwealth should produce all responsive documents currently available to DBHDS employee witnesses Steve Patrick, Deborah Jones and Nan Neese. The court further instructed the Commonwealth to file a statement with the court with regard to its position that production of any electronically stored documents dated prior to 2009 would be unduly burdensome.

On April 13, 2001, the Commonwealth filed an affidavit by John Willinger, the Information Security Officer for DBHDS, (Docket Item No. 170) ("Willinger Affidavit"). A second affidavit from Willinger was attached to the Commonwealth's response to the Motion, (Docket Item 257, Att. No. 2) ("Willinger II Affidavit"). According to Willinger, DBHDS did not receive a

litigation hold notice directing it to preserve all documents, electronic and otherwise, in its possession that may be related to allegations of Medicaid fraud at Keystone Marion Youth Center until April 1, 2010. (Willinger Affidavit at 2.) In response to the litigation hold, Willinger stated that he requested the Virginia Information Technologies Agency, ("VITA"), to copy the "network shares" and "Exchange mailboxes" of all DBHDS employees with potentially relevant information. These copies were made sometime between July 2010 and September 2010.

According to Willinger:

> … Network shares are computer directories located on the DBHDS computer network, and they serve as electronic storage for electronic documents and some email files. Each employee has his own folder, i.e., network share, on the DBHDS computer network. The employee saves to his network share any electronic documents, primarily Microsoft Word and Excel documents and PDFs, that he creates or receives during the normal course of business. …
> … An employee's network share also may contain the employee's Microsoft Outlook email files ("PST file") if the employee specifically selected to save his PST file to the network share. …
> … Exchange mailboxes are the Microsoft Outlook email mailboxes of each individual employee and they are maintained by VITA. The default location for archiving old emails is the hard drive of each employee's local computer, but an employee may choose individually to archive his old emails to the Exchange server. …

(Willinger Affidavit at 2-3.)

Willinger states that DBHDS has used its current Exchange email system since 2009. (Willinger Affidavit at 3.)

The Exchange mailboxes copied by VITA during the summer of 2010 contain only those emails created or received after the conversion to the current system in 2009, configured to be stored on the current Exchange server and actually stored on the current Exchange server at the time that VITA made the copies. (Willinger Affidavit at 3.) Prior to the 2009 conversion, each separate DBHDS facility had its own Exchange server. (Willinger Affidavit at 3.) Full back-up tapes of these individual facility Exchange servers were made each week. (Willinger Affidavit at 3.)

These back-up tapes cannot, however, be accessed by the current DBSDS Exchange server. (Willinger Affidavit at 3.) In order to read these back-up tapes, according to Willinger, VITA would have to recreate the old Exchange server of each facility. (Willinger Affidavit at 3.) VITA has estimated the cost of rebuilding the Exchange servers of the two DBHDS facilities at issue – Central Office in Richmond and the Southwestern Virginia Mental Health Institute in Marion – for the entire period from October 1, 2005, to the conversion in 2009 at in excess of $100,000.00. (Willinger Affidavit at 3-4.) According to Willinger, limiting the scope of the production to a single facility and limiting the number of months included in the time period would limit the cost. (Willinger Affidavit at 4.) Willinger acknowledges that other more efficient and less expensive methods for restoring the information contained on these back-up tapes exists. (Willinger II Affidavit at 4.) Nonetheless, Willinger states that DBHDS, as a state agency, is bound by state law to take all its information technology procurement needs to VITA. (Willinger II Affidavit at 4-5.)

Willinger also stated that he personally made a "forensic image" of the local computer hard drive of each DBHDS employee with potentially relevant information between July 2010 and September 2010. (Willinger Affidavit at 4.) According to Willinger, "A forensic image is a 'copy' of the local computer's hard drive, and this image will capture any electronic file, including a PST, saved by the employee to the hard drive." (Willinger Affidavit at 4.) Nonetheless, Willinger states that DBHDS does not have the technology to read these forensic images and has not searched these forensic images to determine if they contain any information responsive to the court's order. (Willinger Affidavit at 4.) Willinger does admit, however, that these forensic images are searchable by VITA. (Willinger Affidavit at 4.) Such a search may be included in the package of services VITA provides and may not entail any cost, but would take one month or longer to complete. (Willinger Affidavit at 5.)

The Commonwealth also has produced an affidavit from An-Li Hoban, administrative assistant to the Commissioner for DBHDS. (Docket Item No. 257, Att. No. 3) ("Hoban Affidavit"). According to Hoban, from April 1-4, 2011, she reviewed the network shares and Microsoft Outlook email files of the following DBHDS employees: Margaret Walsh, Nan Neese, Deb Jones, Les Saltzberg, Chandra Bragg, Leslie Anderson, Steve Patrick, Amanda Currin, Lonzo Lester, Don Chisler, Debbie Boelte, Joy Lazarus, Joe Cronin and Mickie Jones. (Hoban Affidavit at 1.) Hoban stated that these files were searched using the keywords Keystone, Keystone Marion, fraud, claims, investigation, complaints, DMAS, Department of Medical Assistance Services, billing, billed, overpayment, paid, findings and MFCU and the names David Duncan, Shelly Jones, Megan Johnson, Leslie Webb, Kimberly Stafford-Payne and Barbara Jones. (Hoban Affidavit at 1-

2.) Hoban does not state whether she searched each of these keywords and names separately or in combination. According to Hoban, her search yielded only one responsive document, a draft letter from Shelly Jones of DMAS to David Duncan of Keystone Marion dated March 27, 2008. (Hoban Affidavit at 2.)

According to defense counsel, each of the Relators has asserted that she reported alleged Medicaid fraud by Keystone Marion Youth Center to DBHDS. The defendants have produced at least one email from one of the Relators, Webb, to Jones and Patrick with DBHDS regarding her allegations of Medicaid fraud against Keystone Marion Youth Center. (Docket Item No. 281, Att. No. 1.) Defense counsel also produced a copy of an April 4, 2008, email from Patrick to Jones stating that Douglas Newsome, Regional Manager, had informed him that the Commonwealth was going to sue Keystone Marion Youth Center for Medicaid fraud based on the excessive use of physical restraints in 2005 and 2006. (Docket Item No. 281, Att. No. 2.)

Defendants have offered the affidavit of James W. Burns, Chief Operations Officer of eMag Solutions, LLC, ("eMag"), an electronic discovery vendor and full-service data management provider in support of the Motion. (Docket Item No. 237, Att. No. 3) ("Burns Affidavit"). Burns states that rebuilding the old Exchange server system of the two DBHDS facilities with potentially relevant information is only one method of retrieving this information and it is the most laborious and time-consuming method. (Burns Affidavit at 2-3.) Burns states that, depending on the type of back-up tapes used and the amount of data contained on these tapes, eMag should be able to retrieve the information stored on these back-up tapes in a cost-effective, timely manner using readily available industry technology. (Burns

Affidavit at 2-4.) Burns states that further information would be necessary for him to give an estimate of the time or expense that would be required to retrieve the information, although he stated that eMag charges a flat, per-tape fee for the restoration of back-up tapes and the extraction of mailboxes contained thereon. (Burns Affidavit at 3-4.)

I cannot find that the parties ever submitted a Rule 26(f) discovery plan to the court, and counsel present at the July 28 hearing did not know if or how the parties' discovery plan addressed the disclosure of electronically stored information.

## II. *Analysis*

The Motion urges the court to order the production of the electronically stored information at issue from the Commonwealth or, in the alternative, to impose sanctions against the Commonwealth for its failure to do so. In particular, the defendants ask the court to impose an inference that the documents not produced would establish that the Relators did not submit complaints of Medicaid fraud to DBHDS. This sanction is referred to as the "adverse spoliation inference." *See Evans v. Medtronic, Inc.*, 2005 U.S. Dist. LEXIS 38405, at *39-43 (W.D. Va. Dec. 27, 2005).

The Commonwealth argues that it should not be ordered to review any further electronically stored information of the DBHDS for responsive documents because to do so would be unduly burdensome given the effort and expense required. The Commonwealth also argues that the imposition of any discovery

sanction, including the adverse spoliation inference, is inappropriate in this case because it did not destroy, nor has it failed to preserve, any evidence which it had reason to believe was relevant to the matters before the court. In particular, the Commonwealth argues that it had no reason to believe that DBHDS records would be relevant to this case until a March 17, 2010, letter from defense counsel put it on notice that it should take appropriate steps to preserve relevant information in the DBHDS records. (Docket Item No. 257, Att. No. 5.)

A party seeking to avoid the production of responsive electronically stored information based on undue burden must demonstrate that the information is "not reasonably accessible because of undue burden or cost." FED. R. CIV. P. 26(b)(2)(B). If the responding party makes this showing, "the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C)." FED. R. CIV. P. 26(b)(2)(B). Rule 26(b)(2)(C) requires the court to weigh "the burden or expense of the proposed discovery" against "its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C). Rule 37(e) states:

> Absent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system.

FED. R. CIV. P. 37(e).

In this case, DBHDS admits that it did not put a litigation hold in place until April 1, 2010. The documents before the court, however, clearly show that the Commonwealth knew by April 4, 2008, that it intended to intervene in this action and that DBHDS records would be relevant to its claims. In particular, the April 4, 2008, email from Patrick at DBHDS states that DBHDS was being asked to review its own records in an effort to assist in the Commonwealth's investigation of Keystone Marion Youth Center for allegations of Medicaid fraud. That being the case, the Commonwealth has offered no credible explanation of why it did not put a litigation hold in place with regard to relevant DBHDS records until almost two years later. Furthermore, the defendants have shown that electronically stored information relevant to this case did, at some point, exist on the DBHDS pre-2009 email system, in that the Relators have stated that they each sent emails accusing Keystone Marion Youth Center of Medicaid fraud to DBHDS prior to their departures in 2006. Thus, a portion of the electronically stored information at issue in this Motion became less accessible based on the Commonwealth's own negligent failure to take steps to adequately preserve relevant information and not as a result of the routine, good-faith operation of an electronic information system.

The issue the court must consider, with regard to the pre-2009 email files, is whether the Commonwealth should be excused from production of electronically stored information due to undue burden or cost caused by its own negligent actions. Based on the facts before the court in this case, I find that the Commonwealth should not be excused from production of this information. As stated above, the party asserting undue burden has the burden of proving such to the court. I find that the Commonwealth has not made the required showing. While the Commonwealth has produced evidence that one method of retrieval of the pre-

2009 email files would be costly and time consuming, it concedes that other more efficient and less expensive methods of retrieval exist. Furthermore, the defendants have produced evidence that these pre-2009 email files can be retrieved rather easily at less expense by a commercial vendor.

In reaching my conclusion, I also have considered that the Government is seeking recovery of all Medicaid funds paid to Keystone Marion Youth Center from 2005 to 2010, a figure that has been estimated in excess of $10 million. I further have considered the fact that the defendants have produced evidence that it is highly likely that these pre-2009 email files contain documents relevant to the defense of this case. That being the case, I will order that the back-up tapes containing the pre-2009 email files for the Central Office and Marion DBHDS facilities be produced to defense counsel for use by a commercial vendor to retrieve these files in a format usable by the Commonwealth to search for responsive documents.

The court also must consider whether it should order the searching and production of any relevant documents found on the September 2010 forensic images of the hard drives of all DBHDS personnel who the Commonwealth believed possessed potentially relevant information. Although the Commonwealth has preserved this information, it admits that it has not searched the images to determine if they contain any responsive documents because it does not possess the technology to do so. Based on the facts of this case, I will order that the Commonwealth produce these forensic images or copies thereof to defense counsel for use by a commercial vendor to retrieve the information contained therein in a format usable by the Commonwealth to search for responsive documents.

At this point, any costs involved in retrieval of this electronically stored information will be borne by the defendants, subject to the filing of a motion outlining an estimate of the costs to be incurred and seeking reimbursement of those costs from the Commonwealth.

An appropriate order will be entered.

ENTERED this 5th day of August, 2011.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE