IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and COMMONWEALTH OF VIRGINIA, *ex rel.* Megan L. Johnson, Leslie L. Webb, and Kimberly Stafford-Payne, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 1:07-CV-000054 |
| UNIVERSAL HEALTH SERVICES, INC., KEYSTONE EDUCATION AND YOUTH SERVICES, LLC, and KEYSTONE MARION, LLC, d/b/a MARION YOUTH CENTER, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## SETTLEMENT AGREEMENT

### I. PARTIES

This Settlement Agreement (the "Agreement") is entered into among the United States of America, acting through the United States Attorney's Office for the Western District of Virginia, the Civil Division of the United States Department of Justice, and the Office of Inspector General of the Department of Health and Human Services ("HHS-OIG") (collectively the "United States"); the Commonwealth of Virginia, acting through the Virginia Attorney General's Medicaid Fraud Control Unit, and the Virginia Department of Medical Assistance Services ("DMAS") (collectively the "Commonwealth"); Universal Health Services, Inc. ("UHS"), Keystone Education and Youth Services, LLC ("Keystone Education") and Keystone Marion, LLC d/b/a Keystone Marion Youth Center ("KMYC") (collectively, the "Defendants"), through their authorized representatives; and Megan L. Johnson, Leslie L. Webb, and Kimberly Stafford-Payne (collectively, the "Relators"). The United States and the Commonwealth shall be

collectively referred to as the "Government." The United States, the Commonwealth, the Defendants, and the Relators shall collectively be referred to as the "Parties."

## II. PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

A. UHS is a Delaware corporation headquartered in King of Prussia, Pennsylvania. UHS purchased Keystone Education and KMYC in October 2005. Keystone Education is a Tennessee corporation headquartered in Nashville, Tennessee. KMYC is located at 225 Main Street, Marion, Virginia, and formerly operated a level C residential treatment facility providing inpatient psychiatric services to youths and adolescents under the age of 21, which is referred to in this agreement as the Marion Youth Center ("MYC").

B. The Relators are individual residents of the Commonwealth of Virginia. On June 14, 2007, the Relators filed a *qui tam* action in the United States District Court for the Western District of Virginia captioned *United States of America and Commonwealth of Virginia ex rel. Megan L. Johnson, Leslie L. Webb, and Kimberly Stafford-Payne v. Universal Health Services, Inc., Keystone Education and Youth Services, LLC, and Keystone Marion, LLC d/b/a Marion Youth Center*, No. 1:07-CV-000054 (hereinafter "the Civil Action"). The Civil Action contained allegations that Defendants violated the Federal False Claims Act, 31 U.S.C. §§ 3729-3733 (the "FCA"), the Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216 (the "VFATA"), and various allegations of employment discrimination and retaliation.

C. The Relators had each previously been employed as therapists at KMYC. The Government filed its Notice of Election to Intervene in the Civil Action on November 4, 2009, and filed its Complaint on March 2, 2010. The Government filed its Amended Complaint on November 24, 2010 (the "Amended Complaint"). The Government intervened only in the portions of the Civil Action relating to the FCA and VFATA allegations. The Amended

Complaint also included an allegation that the Defendants violated the Virginia Fraud Statute, Va. Code Ann. § 32.1-312. This Settlement Agreement only covers the FCA (excluding Relators' § 3730(h) claims), VFATA (excluding Relators' § 8.01-216.8 anti-discrimination claims), Virginia Fraud Statute, and the other claims contained in the Amended Complaint, and the Administrative Claim defined in II.G., all of which will be more explicitly stated below. The Relators' additional claims are addressed in a separate agreement between the Relators and the Defendants.

D. The Government contends that the Defendants presented or caused to be presented claims to the Virginia Department of Medical Assistance Services ("DMAS"), acting through its duly authorized agents, which administered the Virginia Medicaid Program established pursuant to Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v.

E. The Government contends that it has certain civil claims against the Defendants, arising during the time period from October 1, 2004 through March 2, 2010, for engaging in conduct more specifically set forth in the Government's Complaint, filed on March 2, 2010 and Amended Complaint, filed on November 24, 2010 (hereinafter referred to as the "Covered Conduct").

F. The Government also contends that it has certain administrative claims against the Defendants for engaging in the Covered Conduct, as specified in Paragraphs III.3 and III.9 below.

G. DMAS also contends that it has a Medicaid reimbursement administrative overpayment claim against KMYC for failing to comply with applicable Medicaid laws, regulations, and policies of DMAS, including, without limitation, DMAS's Psychiatric Services Manual, in providing service to ten (10) recipients at MYC from the dates of admission through

December 31, 2006 (the "Administrative Claim"). As a result of this alleged noncompliance, DMAS alleges that KMYC was overpaid for such services in the amount of $776,260.76.

H.      Upon receiving notice of the Administrative Claim, KMYC pursued its administrative appeal right (the "Administrative Appeal"), which appeal remains pending with DMAS.

I.      This Agreement is neither an admission of liability by the Defendants nor a concession by the Government that its claims are not well founded.

J.      Relators claim entitlement under 31 U.S.C. § 3730(d) and under Va. Code Ann. § 8.01-216.7(A) to a share of the proceeds of this Settlement Agreement and to Relators' reasonable expenses, attorney's fees and costs.

K.      To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises of this Settlement Agreement, the Parties agree and covenant as follows:

### III. TERMS AND CONDITIONS

1.      Pursuant to a telephone discussion between counsel for the United States and counsel for Defendants, on November 4, 2011, Defendants deposited $6,850,000 into an interest bearing account of their selection. Within ten (10) business days of the effective date of this Agreement as defined in paragraph 29, or after receipt of the notification of payment instructions, whichever is later, Defendants shall direct payment to the Government in the amount of $6,850,000 (Six Million Eight Hundred Fifty Thousand Dollars and No Cents) (the "Settlement Amount") from the interest bearing account, plus the amount of interest earned on those funds from the interest bearing account from November 4, 2011 through the date of distribution to the United States. The Commonwealth's portion of the Settlement Amount shall be held by the United States in escrow until distributed.

Case 1:07-cv-00054-JPJ-PMS   Document 313   Filed 03/28/12   Page 4 of 22   Pageid#: 2853

2.      The Defendants shall pay to the Relators the sum to which the parties agreed, which is specified in the separate agreement between Defendants and Relators, in settlement of the individual discrimination/retaliation claims asserts in Relators' Second Amended Complaint, and for all attorney's fees, costs and expenses related to those claims.

3.      Upon execution of this Agreement by all signatories, KMYC shall withdraw, with prejudice, its currently pending Administrative Appeal, as defined in II.H., above.

4.      Subject to the exceptions in Paragraph 9 (concerning excluded claims) below, and conditioned upon Defendants' full payment and distribution of the Settlement Amount, as referenced in Paragraph 1, the United States releases Defendants, together with their current and former parent corporations, each of their direct and indirect subsidiaries (including but not limited to UHS of Delaware, Inc.), brother or sister corporations, divisions, current or former owners, officers, employees, directors, affiliates, and successors and assigns of any of them (collectively, the "Released Parties") from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

5.      Subject to the exceptions in Paragraph 9 (concerning excluded claims) below, and conditioned upon Defendants' full payment and distribution of the Settlement Amount, as referenced in Paragraph 1, the Commonwealth releases the Released Parties from any civil claim the Commonwealth has for the Covered Conduct under the Virginia Fraud Against Taxpayers Act, Va. Code Ann. §§ 8.01-216.1 *et seq.*, and Va. Code Ann. §§ 32.1-312 and 313.

6.      Conditioned on Defendants' full payment and distribution of the Settlement Amount, as referenced in Paragraph 1, and on KMYC's withdrawal of its current pending

Administrative Appeal, with prejudice, DMAS and its respective successors, assigns, agents, heirs and attorneys release KMYC and its successors, predecessors, current and former directors, affiliates, members, managers, management companies, attorneys, employees, agents and heirs from any claims DMAS may have that are the subject of the Administrative Claim, as defined in Section II.G, and from any administrative claim regarding Medicaid reimbursement DMAS may have against KMYC for residential treatment service provided at MYC through March 2, 2010 under Va. Code Ann. 32.1-325.1 and Va. Code Ann.32.1-325.1:1.

7.    Subject to the exceptions in Paragraph 9 below, and conditioned upon Defendants' full payment of the Settlement Amount, each Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, releases the Released Parties from any civil monetary claim the Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

8.    HHS-OIG expressly reserves all rights to institute, direct, or to maintain any administrative action seeking exclusion against Defendants and/or their officers, directors, and employees from Medicare, Medicaid, and all other Federal health care programs (as defined in 42 U.S.C. § 1320a-7(b)(f)) under 42 U.S.C. § 1320a-7(a) (mandatory exclusion), or 42 U.S.C. § 1320-7(b) or 42 U.S.C. § 1320a-7a (permissive exclusion).

9.    Notwithstanding the releases given in Paragraphs III.4-6 of this Agreement, or any other term of this Agreement, the following claims of the United States and/or the Commonwealth are specifically reserved and not released:

a.    Any civil, criminal or administrative liability arising under Title 26, United States Code (Internal Revenue Code);

b.    Any criminal liability;

c.     Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

d.     Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.     Any liability to the Commonwealth for any conduct other than the Covered Conduct (with the specific and only exception being the DMAS Administrative Claim, set out in Section II.G);

f.     Any liability to DMAS for any conduct other than the Administrative Claim or other administrative Medicaid reimbursement claim involving MYC through March 2, 2010;

g.     Any liability to any locality or political subdivision of the Commonwealth;

h.     Any liability based upon such obligations as are created by this Agreement; and

i.     Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

10.     Relators and their respective heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B) and Va. Code Ann. § 8.01-216.6(C).  In connection with this Agreement and this Civil Action, Relators and their respective heirs, successors, attorneys, agents, and assigns agree that neither this Agreement, any intervention by the United States and/or the Commonwealth in the Civil Action in order to dismiss the Civil Action, nor any dismissal of the Civil Action, shall waive or otherwise affect the ability of the United States and/or the Commonwealth to contend that provisions of the FCA, including 31 U.S.C. §§ 3730(d)(3) and 3730(e), and the VFATA,

Case 1:07-cv-00054-JPJ-PMS   Document 313   Filed 03/28/12   Page 7 of 22   Pageid#: 2856

including Va. Code Ann. §§ 8.01-216.7(C) and 8.01-216.8, bar Relators from sharing in the proceeds of this Agreement. Moreover, the United States, the Commonwealth, and the Relators and the Relators' respective heirs, successors, attorneys, agents, and assigns, agree that they each retain all of their rights pursuant to the FCA and the VFATA on the issue of share percentage, if any, that Relators should receive of any proceeds of this settlement, and that no agreements specifying Relators' share percentage have been reached to date.

11.     Relators and their respective heirs, successors, attorneys, agents, and assigns, release the Released Parties from any liability to Relators arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) or under Va. Code Ann. § 8.01-216.7 for expenses or attorney's fees and costs. The release by Relators of their other claims asserted in the Civil Action, including those arising under 31 U.S.C. § 3730(h) and the anti-discrimination provisions of Va. Code § 98.01-216.8, are addressed in the separate agreement between Defendants and Relators.

12.     Defendants waive and will not assert any defenses they may have to any criminal prosecution or administrative action relating to the Covered Conduct, that may be based in whole or in part on a contention that, under the Double Jeopardy Clause of the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

13.     Defendants and the Released Parties fully and finally release the United States and the Commonwealth, their respective agencies, employees, servants, and agents from any claims (including attorney's fees, costs, and expenses of every kind and however denominated,

specifically including any costs for electronic discovery formatting that the Commonwealth may have agreed to reimburse) that Defendants and the Released Parties have asserted, could have asserted, or may assert in the future against the United States and the Commonwealth, their respective agencies, employees, servants, and agents, related to the Covered Conduct and the Government's investigation and prosecution thereof. Defendants and the Released Parties further fully and finally release DMAS from any document production obligation that arose out of the Administrative Appeal, including but not limited to, the Order issued by Judge Markow on July 19, 2010, regarding production of privileged materials (Case No. CM10-416).

14. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicaid carrier or intermediary or any State payer, related to the Covered Conduct; and Defendants shall not resubmit to any Medicaid carrier or intermediary or any State payer any previously denied claims related to the Covered Conduct, and shall not appeal any such denials of claims.

15. Defendants agree to the following:

(a) Unallowable Costs Defined: "Unallowable Costs" for purposes of this agreement shall be costs (as defined in the Federal Acquisition Regulations (FAR), 48 C.F.R. § 31.205-47, and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk and 1396-1396w-5 (and the regulations and official program directives promulgated thereunder)) incurred by or on behalf of Defendants, their present or former officers, directors, employees, shareholders, agents, and other entities released in Paragraphs 4-6, *supra*, in connection with:

(1) the matters covered by this Agreement;

(2) external costs or expenses associated with the Government's audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3) external costs or expenses incurred by Defendants relating to the investigation, defense, and corrective actions undertaken in response to the Government's audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4) the negotiation and performance of this Agreement; and

(5) the payment Defendants make to the Government pursuant to this Agreement and any payments that Defendants may make to Relators, including costs and attorneys' fees.

(b)    Future Treatment of Unallowable Costs:  If applicable, these unallowable costs, as defined in Paragraph 15(a), will be separately determined and accounted for by Defendants, and Defendants will not charge such unallowable costs directly or indirectly to any contracts with the United States or any State Medicaid Program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Defendants or any of their subsidiaries to the Medicaid Program.

(c)    Treatment of Unallowable Costs Previously Submitted for Payment: If applicable, Defendants further agree that within 90 days of the Effective Date of this Agreement they will identify to applicable Medicaid fiscal agents and to the applicable Medicaid program, any unallowable costs (as defined in this Paragraph 15(a)) included in payments previously sought from the United States, or any State Medicaid Program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Defendants or any of their subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the unallowable costs. Defendants agree that the United States and the Commonwealth, at a minimum, shall each be

entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such unallowable costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States and the Commonwealth reserve their rights to disagree with any calculations submitted by Defendants or any of their subsidiaries or affiliates on the effect of inclusion of unallowable costs (as defined in Paragraph 15(a)) on Defendants or any of their subsidiaries' or affiliates' cost reports, cost statements, or information reports.

(d)     Nothing in this Agreement shall constitute a waiver of the rights of the United States or the Commonwealth to audit, examine, or re-examine Defendants' books and records to determine that no unallowable costs have been claimed in accordance with the provisions of this Paragraph.

16.     This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 17 below.

17.     Defendants agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

18.     Upon receipt of the payments described in Paragraphs 1 and 2 above, the Parties shall promptly sign and file in this Civil Action a Joint Stipulation of Dismissal with prejudice of the Civil Action pursuant to Rule 41(a)(1).

Case 1:07-cv-00054-JPJ-PMS   Document 313   Filed 03/28/12   Page 11 of 22   Pageid#: 2860

19.     Except as expressly provided to the contrary in this Agreement, each Party will bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

20.     UHS and Keystone Education warrant that they shall remain solvent following the payment of the Settlement Agreement to the United States and the Commonwealth. For the purposes of this settlement agreement only, all three Defendants hereby agree that they are jointly and severally liable for the Settlement Amount due under this Settlement Agreement. In the event that the Government does not receive payment under this Settlement Agreement, or if its payment is returned for any reason, the Government will, within five business days, notify all Parties of a default under the terms of this Settlement Agreement. Upon receipt of such default notice, Defendants agree to make full and final payment to the Government within five days. All releases to the Defendants provided under the terms of this Settlement Agreement are conditioned upon the receipt of full and final payment of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Defendants, within the meaning of 11 U.S.C. §547(c)(1); and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay or defraud any entity to which Defendants were or became indebted, on or after the date of this transfer, all within the meaning of 11 U.S.C. § 548(a)(1).

21.     Each party and signatory to this Agreement represents that it or she freely and voluntarily enters into this Agreement without any degree of duress or compulsion whatsoever.

In addition, counsel for the Defendants and for the Relators have reviewed this Agreement and jointly participated in its drafting.

22. This Agreement is governed by the laws of the United States and the Commonwealth of Virginia. The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement will be the United States District Court for the Western District of Virginia, with the specific exception of any dispute brought by DMAS. With respect to any dispute arising between and among DMAS and Defendants under this Agreement, exclusive jurisdiction and venue lies with the Commonwealth of Virginia in the Circuit Court of the City of Richmond. For the purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

23. Except for the separate agreement entered into by the Relators and the Defendants to resolve the Relators' discrimination/retaliation claims, this Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

24. In the event that Defendants fail to comply in good faith with any of the terms of this Agreement, the United States and/or the Commonwealth may, at their sole and respective discretion, exercise all available civil and administrative remedies, including an award of reasonable attorney's fees and costs.

25. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

26. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same agreement.

27.     This Agreement is binding on and inures to the benefit of Defendants' successors, transferees, heirs, and assigns.

28.     All Parties consent to the Government's disclosure of this Agreement and information about this Agreement to the public.

29.     This Agreement is effective on the date of signature of the last signatory to the Agreement.  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

30.     Each party warrants that its designated signatory is authorized to sign on its behalf.

31.     This Agreement is subject to the provisions of Virginia Code § 2.2-514 and shall not be effective until the formal approval of the terms of this Agreement pursuant to that Code Section.


**BALANCE INTENTIONALLY LEFT BLANK – ENDORSEMENTS TO FOLLOW**

THE UNITED STATES OF AMERICA

TIMOTHY J. HEAPHY
United States Attorney
Western District of Virginia

DATE: 3/28/12

Rick A. Mountcastle, VSB #19768
Daniel P. Bubar
Assistant United States Attorneys
P.O. Box 1709
Roanoke, VA 24008-1709
540/857-2254; 540/857-2283 (fax)
rick.mountcastle@usdoj.gov
daniel.bubar@usdoj.gov

TONY WEST
Assistant Attorney General
Civil Division

DATE: _____

Joyce R. Branda
Renee Brooker
Brian J. McCabe, VSB #41693
Attorneys, Civil Division
U.S. Department of Justice
P.O. Box 261, Ben Franklin Station
Washington, DC 20044
(202) 616-4875; (202) 514-0280 (fax)
brian.mccabe@usdoj.gov

DATE: 3/16/12

Gregory E. Demske
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
U.S. Department of Health Human Services

15 of 20

THE UNITED STATES OF AMERICA

TIMOTHY J. HEAPHY
United States Attorney
Western District of Virginia

DATE: _____

_____
Rick A. Mountcastle, VSB #19768
Daniel P. Bubar
Assistant United States Attorneys
P.O. Box 1709
Roanoke, VA 24008-1709
540/857-2254; 540/857-2283 (fax)
rick.mountcastle@usdoj.gov
daniel.bubar@usdoj.gov

TONY WEST
Assistant Attorney General
Civil Division

DATE: 3/26/12

_____
Joyce R. Branda
Renee Brooker
Brian J. McCabe, VSB #41693
Attorneys, Civil Division
U.S. Department of Justice
P.O. Box 261, Ben Franklin Station
Washington, DC 20044
(202) 616-4875; (202) 514-0280 (fax)
brian.mccabe@usdoj.gov

DATE: _____

_____
Gregory E. Demske
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
U.S. Department of Health Human Services

THE COMMONWEALTH OF VIRGINIA

DATE: 3/09/12        BY: _Cynthia B. Jones_____
                          CYNTHIA B. JONES
                          Director
                          Department of Medical Assistance Services
                          600 East Broad Street
                          Richmond, Virginia 23219

DATE: 3/16/12        BY  _Ken C II_____
                          HONORABLE KENNETH T. CUCCINELLI, II
                          Attorney General
                          Virginia Attorney General's Office

DATE: 3-23-12        BY: _____
                          HONORABLE MARTIN L. KENT
                          Chief of Staff
                          Office of the Governor

16 of 20

UNIVERSAL HEALTH SERVICES, INC.

DATE: 3·14·12

By: _Matthew Klein_
Vice President and General Counsel

DATE: 3-26-12

Frederick Robinson, Esq.
Peter Leininger, Esq.
Fulbright & Jaworski, L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2623
frobinson@fulbright.com
pleininger@fulbright.com

Martin A. Donlan, Jr., Esq.
W. Benjamin Pace, Esq.
Williams Mullen, P.C.
Post Office Box 1320
Richmond, VA 23218-1320
mdonlan@williamsmullen.com
wpace@williamsmullen.com

Counsel for Universal Health Services, Inc.

## KEYSTONE EDUCATION AND YOUTH SERVICES, LLC

DATE: _3 - 14.12_

By:    KEYS Group Holdings, LLC
       Its Sole Member

By:    UHS Children Services, Inc.
       Its Sole Member

_____
Steve Filton
Vice President

DATE: _3 - 26 -12_

_____
Frederick Robinson, Esq.
Peter Leininger, Esq.
Fulbright & Jaworski, L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2623
frobinson@fulbright.com
pleininger@fulbright.com

Martin A. Donlan, Jr., Esq.
W. Benjamin Pace, Esq.
Williams Mullen, P.C.
Post Office Box 1320
Richmond, VA 23218-1320
mdonlan@williamsmullen.com
wpace@williamsmullen.com

Counsel for Keystone Education and Youth
       Services, LLC

KEYSTONE MARION, LLC, d/b/a KEYSTONE MARION YOUTH CENTER

DATE: 3-15-2012

By:      Rick Bridges,
Chief Executive Officer, Keystone Marion
Youth Center

DATE: 3-26-12

Frederick Robinson, Esq.
Peter Leininger, Esq.
Fulbright & Jaworski, L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2623
frobinson@fulbright.com
pleininger@fulbright.com

Martin A. Donlan, Jr., Esq.
W. Benjamin Pace, Esq.
Williams Mullen, P.C.
Post Office Box 1320
Richmond, VA 23218-1320
mdonlan@williamsmullen.com
wpace@williamsmullen.com

Counsel for Keystone Marion, LLC,
       d/b/a Keystone Marion Youth Center

<u>RELATORS</u>

DATE: _____

_____
Megan Johnson
Relator

DATE: _03.27.12_

*Leslie L. Webb*

Leslie Webb
Relator

DATE: _____

_____
Kimberly Stafford
Relator

DATE: _____

_____
Mark T. Hurt, Esq.
159 West Main Street
Abingdon, VA 24210
markthurt@yahoo.com

Daniel R. Bieger, Esq.
Copeland & Bieger, P.C.
P.O. Box 1296
Abingdon, VA 24212-1296
dbieger@copelandbieger.com

Counsel for Relators

RELATORS

DATE: _3-27-12_                    _Megan Johnson_
                                   Megan Johnson
                                   Relator


DATE: _____                   _____
                                   Leslie Webb
                                   Relator


DATE: _3/26/12_                    _____
                                   Kimberly Stafford
                                   Relator


DATE: _3/27/12_                    _____
                                   Mark T. Hurt, Esq.
                                   159 West Main Street
                                   Abingdon, VA 24210
                                   markthurt@yahoo.com

                                   Daniel R. Bieger, Esq.
                                   Copeland & Bieger, P.C.
                                   P.O. Box 1296
                                   Abingdon, VA 24212-1296
                                   dbieger@copelandbieger.com

                                   Counsel for Relators